Exhibit 1

73MZ911C

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    In Re: 9/11 Property Damage
     and Business Loss Litigation
4

5                                    21 MC 97, 101 (AKH)

6

     ------------------------------x
7

                                     March 22, 2007
8                                    3:30 p.m.

9    Before:

10                    HON. ALVIN K. HELLERSTEIN,

11                                           District Judge

12                            APPEARANCES

13   KEITH S. FRANZ

14   ROBERT A. CLIFFORD
     TIMOTHY J. TOMASIK
15

16   LEE GODFREY

17   MARC S. MOLLER

18   BETH GOLDMAN
     SARAH NORMAND
19   JEANETTE VARGAS

20   ROGER PODESTA

21   DOUGLAS J. PEPE

22   DONALD MIGLIORI

23   APPEARANCES: (continued)

24   JEFFREY ELLIS

25   DESMOND BARRY

73MZ911C

1    RICHARD A. WILLIAMSON
     CATHI HESSION
2    JASON COHEN

3    FRANKLIN M. SACHS

4    RICHARD CAMPBELL

5    JOSEPH WAYLAND

6    JAMES P. CONNORS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

73MZ911C

1    think any government discovery is relevant any more.  They

2    don't think any depositions of the government are relevant any

3    more, and they're ready to go ahead and try their cases.

4        We think it's obvious on the face of the case that the

5    Government's at the heart of it, and the government discovery

6    is critical to our defenses as we explained to you.

7        I'm prepared to talk at length about why that is, but

8    I don't think it's necessary to do so.  And one of the reasons

9    I don't think it is necessary to do so is because the

10   plaintiffs, themselves, all of them, each one of them signed a

11   document which they submitted to the Eastern District of

12   Virginia, and then went to the Court's Circuit on and said we

13   need all of this government discovery because it is relevant to

14   the claims that's relevant to the defenses and it's relevant to

15   the duties of the, of all of the parties involved.  So I hope I

16   don't have to spend much time because I think before today,

17   everyone recognized the need to take discovery of the

18   government.

19       THE COURT:  Well, the issues I put are Louie Freeh,

20   George Tenet and Richie Clark.

21       MR. WAYLAND:  I think, your Honor, with respect to

22   those three specific requests, the way we proceeded was to

23   begin the process to see what the reaction of the government

24   would be.

25       THE COURT:  They came back with a predictable

73MZ911C

1    response.

2            MR. WAYLAND:  But -- for the individuals, your Honor,

3    but not so much for the subject matter of the testimony that we

4    wanted.  And if you look at the --

5            THE COURT:  All right.  So we have consensus that Mr.

6    Freeh, Mr. Tenet and Mr. Clark will not be witnesses, at least

7    not at the present juncture

8            MR. WAYLAND:  Not at the present time, as long as

9    we -- just as we did the FAA, they provided a 30(b)(6) witness

10   to substitute, so.

11           THE COURT:  All right.  Those notices involving

12   Messrs. Freeh, Tenet and Clark are withdrawn.

13           MR. WAYLAND:  Well, with respect to them individually.

14   With respect to subject matter, just as with the FAA --

15           THE COURT:  If you're looking for 30(b)(6), you can't

16   determine who the people will be.

17           MR. WAYLAND:  You're right, your Honor.  Okay.

18           THE COURT:  So Freeh, Tenet and Clark can go about

19   their business.

20           MR. WAYLAND:  They may, your Honor, but we will

21   pursue --

22           THE COURT:  The will breathe a sigh of relief.

23           30(b)(6) FAA witnesses, is there any objection to

24   this?

25           MS. NORMAND:  No, your Honor.  In fact, we've had an

73MZ911C

1    initial meet and confer with the defendants, and I think it was

2    a very productive meeting.  We agreed on a number of topics

3    that would be appropriate.  There are outstanding issues,

4    however.  We've, for example, made clear to the defendants our

5    view that information, intelligence information known to the

6    FAA or not known to the FAA that was not communicated to the

7    airlines is not relevant to the issues in dispute in this case,

8    and for obvious reasons raises a host of issues for the

9    government.

10        THE COURT:  I've dealt with that issue in connection

11   with World Trade Center applications if I remember correctly

12   and I'll deal with them again, and I think those parties

13   pushing for that need to know the record.

14        MR. MOLLER:  We will, your Honor.

15        THE COURT:  By I anticipate that I would rule that

16   information not communicated is not relevant.

17        MR. WAYLAND:  Your Honor, this is an extraordinary

18   serious issue for all the defendants and we need to make a

19   substantial record on that with a hearing and the opportunity

20   to -- full briefing.  Because we think once your Honor hears

21   our argument, sees the law on this issue and thinks about the

22   issues, you may have a different view of, so we need to have a

23   second --

24        THE COURT:  Make a motion.  Do it by motion.

25        MR. WAYLAND:  All right.

73MZ911C

1          MR. MIGLIORI:  Your Honor, we'd ask that it be made

2     promptly as well, because --

3          THE COURT:  Mr. Wayland can make it promptly.

4          MR. WAYLAND:  We will make it promptly, your Honor.

5     It's a substantial motion.  It will take some time to put it

6     together, but we will make a motion.

7          THE COURT:  30 days?

8          MR. WAYLAND:  30 days, your Honor.

9          MR. MIGLIORI:  Your Honor, just so it's clear on the

10    record, the representation -- there are two types of federal

11    discovery.  One has to do with the investigations of what

12    happened on 9/11 and leading up to 9/11, as opposed to the

13    discovery of what the government knew pre9/11 and what it did

14    or didn't tell, and we share the Government's concern about the

15    letter.

16         THE COURT:  I didn't catch the distinction.

17         MR. MIGLIORI:  The nine -- the FBI after, on the day

18    of 9/11, went right to Logan and started interviewing people

19    with knowledge about the events immediately.

20         THE COURT:  And I understand that can lead to relevant

21    information.

22         MR. MIGLIORI:  And that's an investigative discovery

23    consistent with what plaintiffs have asked for in a very

24    tailored specific way.  That's --

25         THE COURT:  Is the FBI willing to surrender that

73MZ911C

1    information?

2          MR. MIGLIORI:  Some of it has come.

3          MS. NORMAND:  Your Honor, that is the type of

4    information that is likely to be provided.  I'm not in a

5    position to articulate our position as to specific documents,

6    but things like interviews of employees at the airport and

7    things confiscated by FBI or FAA as of that time, those are

8    probably the types of things that will be appropriately

9    provided.

10          THE COURT:  Well, If produced, I can understand that

11    those are relevant in discovery sense.

12          MR. MIGLIORI:  So that's one area that we've been sort

13    of in agreement.  And we agree with the government, though,

14    that discovery of the government, the government about what

15    they knew or didn't tell prior to 9/11, didn't tell the

16    defendants, plaintiffs think that's highly irrelevant and --

17          THE COURT:  I understand.  But Mr. Wayland --

18          MR. MIGLIORI:  No, I understand.

19          THE COURT:  -- is pushing for that and he has a right

20    to make his record.

21          MR. MIGLIORI:  And we'll respond appropriately.  I

22    just want to make sure the Court was aware there are two

23    different types of federal discovery that we're talking about.

24          THE COURT:  Mr. Wayland, would you create a briefing

25    schedule for this?

73MZ911C

1    are taken off the table today, but will be replaced by the

2    30(b)(6).  And I don't think even if we win our motion, your

3    Honor, it's more than another 20 or so witnesses, if we really

4    parse through it and try and get the people who can really

5    provide the answer, so I don't think --

6         THE COURT:  The fewer number of witnesses in

7    prospect --

8         MR. WAYLAND:  I don't think --

9         THE COURT:  -- the better your chances of getting a

10   practical result.

11        MR. WAYLAND:  Right.

12        THE COURT:  In saying.  Go ahead and get done within a

13   space of narrow frame.

14        MR. WAYLAND:  Exactly.  It's not a -- this is not

15   morass.  It's pretty focused exercise.

16        THE COURT:  I'm reacting, though, to Mr. Barry's

17   letter, which really made me concerned about the number of

18   people that he has in mind.

19        MR. WAYLAND:  It's not, it's not a large number, your

20   Honor.

21        MR. BARRY:  That was a joint letter.  I know I've been

22   vilified for signing that letter, but, you know, that was on

23   behalf of all the aviation defendants.

24        THE COURT:  You've told me that privately.

25        MR. MIGLIORI:  I heard that too, your Honor.

73MZ911C

1    MR. MOLLER:  I would request in Mr. Wayland's motion

2    that they identify the individuals who constitute the universe

3    of people they think they want to depose, because that will

4    also sharpen the focus.

5    MR. BARRY:  In addition to the 30(b)(6).

6    THE COURT:  I'm not going to impose that because, once

7    it gets into a motion, there's more inflexibility than without

8    it.  But I think you might share in a side letter where you're

9    dealing with best representation and good faith rather than a

10   hard rule.

11   MR. WAYLAND:  I will, your Honor.

12   MR. WAYLAND:  I would just like to second that,

13   because we have been asking for lists of witnesses since

14   September, and we've gotten Clark and Tenet and Freeh and few

15   others in the last now month, but apparently there are longer

16   lists of witnesses and government's position may not be the

17   same as to each witness.  We're really trying to take a

18   targeted witness by witness approach here, so there may -- I

19   would like to narrow the dispute.

20   THE COURT:  Yeah, and I think as I said before, the

21   fewer the witnesses, the more practical an answer can be

22   gotten.

23   MR. BARRY:  Well, true.  And the plaintiffs have a

24   rather long list of government witnesses that they put forth.

25   THE COURT:  Yeah, but I gather from them that --

Exhibit 2

# KREINDLER & KREINDLER LLP

Harry E. Kreindler (1919-1984)
Lee S. Kreindler (1949-2003)
Marc S. Moller
Steven R. Pounian
James P. Kreindler
David C. Cook
David Beekman
Noah H. Kushlefsky
Robert J. Spragg
Brian J. Alexander
Justin T. Green
Andrew J. Maloney III
Daniel O. Rose
_____
Francis G. Fleming
Paul S. Edelman
Milton G. Sincoff
John J. Veth***
     Counsel

100 Park Avenue
New York, NY 10017-5590
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

Susan D. Bainnson
William O. Angelley
Michael R. Sherwin
Hilary B. Taylor
Elizabeth Crotty
Megan Benett

**California Office**
Gretchen M. Nelson*
Stuart R. Fraenkel*
Mark I. Labaton*
_____
Gabriel Barenfeld*

**Massachusetts Office**
Anthony Tarricone*

Susan A. Friery, M.D.°
James D. Gotz*
Joseph P. Musacchio*

*Admitted in CA only
*Admitted in MA only
°Admitted in MA & DC only
*Resident in CA office

May 10, 2007

**VIA EMAIL AND FACSIMILE:  (212) 370-4482**
Desmond T. Barry, Jr., Esq.
Condon & Forsyth LLP
Times Square Tower
7 Times Square
New York, NY 10036

Re:    **In re September 11 Litigation (21 MC 97)**
       **In re September 11 Property Damage and**
       **Business Loss Litigation (21 MC 101)**

Dear Des:

At the March 22 conference before Judge Hellerstein Joe Wayland agreed to provide plaintiffs with a side letter containing the Aviation Defendants' best good faith representation of the government witnesses that the Aviation Defendants want to depose as part of their "targeted witness by witness approach." Transcript, p. 53.

We would like this information promptly so we can consider it in connection with our response to the pending Motion for Focused Discovery from the Government.

Thanks.

Very truly yours,

Marc S. Moller
Plaintiffs' Liaison Counsel

MSM:fg
cc:    WD/PI Plaintiffs' Counsel (Via Facsimile)

Exhibit 3

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax:  (212) 894-6771
dbarry@condonlaw.com

May 15, 2007

**VIA EMAIL**

Marc S. Moller, Esq.
Kreindler & Kreindler LLP
100 Park Avenue
New York, New York 10017

Re:     In re September 11 Litigation, 21 MC 97
        In re September 11 Property Damage and Business Loss Litigation, 21 MC 101
        C & F Ref:  DTB/CRC/VAT/28507

Dear Marc:

I write in response to your May 10, 2007 letter requesting the Aviation Defendants' "best good faith representation of the government witnesses that the Aviation Defendants want to depose."

As you may recall, the Aviation Defendants previously served notices for Rule 30(b)(6) depositions on the Federal Aviation Administration ("FAA"), the Transportation Security Administration ("TSA"), and the Boston Field Office of the Federal Bureau of Investigation ("FBI"). The Aviation Defendants also have requested depositions of several individual government witnesses, including:

1.    Jane Garvey, former FAA Administrator.

2.    Scott Billings, currently a Special Agent with the FBI assigned to the Stillwater, Oklahoma resident agency of the Oklahoma City Division of the FBI. Special Agent Billings formerly was assigned to the Joint Terrorist Task Force in Oklahoma City in August and September of 2001.

3.    Erik T. Rigler, formerly a Special Agent with the FBI.

4.    Michael Rolince, formerly the FBI Section Chief, International Terrorism Operations Section from 1998 to 2002.

5.    Coleen M. Rowley, formerly a Special Agent and Minneapolis Chief Division Counsel with the FBI.

CONDON & FORSYTH LLP

Marc S. Moller, Esq.
May 15, 2007
Page 2

6.   Harry Samit, currently a Special Agent with the FBI assigned to the Minneapolis Field Office. In the summer and autumn of 2001, Special Agent Samit was assigned to the Minneapolis Field Office and the Joint Terrorism Task Force.

7.   The witness identified as "John" in *U.S. v. Moussaoui*, Crim. No. 01-455A (LMB) (E.D.Va.). In 2001, John was the Deputy Chief of the Usama Bin Ladin Unit at the Central Intelligence Agency ("CIA") and was detailed to the FBI Headquarters in the International Terrorism Operations Section ("ITOS").

8.   The witness identified as "Mary" in *U.S. v. Moussaoui*, Crim. No. 01-455A (LMB) (E.D.Va.). Mary was an FBI agent detailed to the Usama Bin Ladin Unit in the Counterterrorism Section ("CTC") of the CIA from 1988 through 2001.

9.   Ramzi Binalshibh, currently in the custody of the United States at a facility located at the U.S. Naval Base, Guantanamo Bay, Cuba.

10.  Khalid Sheikh Mohammed, also currently in the custody of the United States at a facility located at the U.S. Naval Base, Guantanamo Bay, Cuba.

Although the FBI and CIA have denied most of the deposition requests, the Aviation Defendants may challenge the rejections before Judge Hellerstein. Depending upon the outcome of any such proceedings, the Aviation Defendants may then seek to depose additional FBI and CIA witnesses. In addition, for the reasons set forth in the May 7, 2007 letter from Roger Podesta to Assistant United States Attorney, Jeannette Vargas (a copy of which is enclosed), the Aviation Defendants are not in a position at this time to provide you with the names of additional FAA and TSA witnesses that we intend to depose in connection with this litigation. Similarly, we also are unable to provide the names of additional witnesses that we intend to depose from other government agencies or who are in government custody.

Best personal regards.

Sincerely yours,

Desmond T. Barry, Jr.
Aviation Defendants' Liaison Counsel

CONDON & FORSYTH LLP

Marc S. Moller, Esq.
May 15, 2007
Page 3

cc :    <u>Via Email</u>
        Robert A. Clifford, Esq.
        Timothy S. Tomasik, Esq.
        Clifford Law Offices, P.C.
        Property Plaintiffs' Liaison Counsel

        Richard A. Williamson, Esq. .
        M. Bradford Stein, Esq.
        Flemming Zulack Williamson Zauderer LLP
        Ground Defendants' Liaison Counsel

        Beth Jacob, Esq.
        Schiff Hardin LLP
        WTC 7 Ground Defendants' Liaison Counsel

        Beth E. Goldman, Esq.
        Sarah S. Normand, Esq.
        U.S. Attorney's Office

        Aviation Defendants' Counsel

Exhibit 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                   :

IN RE SEPTEMBER 11 LITIGATION        :               21 MC 97 (AKH)
                                   :

-------------------------------------------------------------X

### WTCP CROSS-CLAIM PLAINTIFFS' RESPONSE TO AVIATION DEFENDANTS' SECOND SET OF INTERROGATORIES TO 21 MC 97 PLAINTIFFS AND CROSS-CLAIM PLAINTIFFS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 4 World Trade Center LLC, 5 World Trade Center LLC, 7 World Trade Company, L.P., ("WTCP Cross-Claim Plaintiffs") hereby object and respond to Aviation Defendants' ("Defendants") Second Set of Interrogatories to 21 MC 97 Plaintiffs and Cross-Claim Plaintiffs as follows:

### GENERAL RESPONSES AND OBJECTIONS

WTCP Cross-Claim Plaintiffs make the following general objections to the Interrogatories. These objections are stated here to avoid restating them for each Interrogatory. The assertion of the same, similar, or additional objections in response to a specific Interrogatory does not waive any of WTCP Cross-Claim Plaintiffs' general objections. WTCP Cross-Claim Plaintiffs reserve the right to amend or supplement these objections as may be appropriate.

WTCP Cross-Claim Plaintiffs' responses as set forth herein are based upon information presently known to them. These responses are provided prior to the completion of discovery, including depositions and responses to documentary demands. WTCP Cross-Claim Plaintiffs therefore reserve the right (a) to rely on any facts, documents, or other evidence which may develop or subsequently come to their attention, (b) to assert additional objections or

WTCP Cross-Claim Plaintiffs incorporate each of the foregoing general objections in their responses to each of Aviation Defendants' Interrogatories as if fully set forth therein.

## SPECIFIC RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Do plaintiffs claim that any or all of the defendants had a duty to independently gather and assess terrorist threat info? If so, set forth the basis for this claim. Respond separately as to each defendant.

**RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for a legal conclusion as to the duty owed by defendants, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure. WTCP Cross-Claim Plaintiffs further object specifically to the phrases "gather and assess" and "terrorist threat info" as vague and ambiguous. Without waiving their objections, and subject to them, WTCP Cross-Claim Plaintiffs respectfully refer defendants to Section 14 C.F.R. 108.18 and 108.19 of the Federal Aviation Regulations, Sections 12 (a) and (b) of the Air Carrier Standard Security Program ("ACSSP"), Section 6 of the Checkpoint Operations Guide, the opinion of this Court dated September 9, 2003 and to the common law.**

**INTERROGATORY NO. 2:** Do plaintiffs claim that any or all of the defendants had a duty to design countermeasures to address terrorist threats? If so, set forth the criteria that plaintiffs claim that the defendants should follow to decide which threats need to be addressed and, what defendants should do to respond to same. Respond separately as to each defendant.

**RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for a legal conclusion as to the duty owed by defendants, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure. Without waiving their objections, and subject to them, WTCP Cross-Claim Plaintiffs contend that Defendant air carriers, security companies, Massachusetts Port Authority and Boeing and their agents owed a duty to protect against the class of foreseeable hazards to prevent harm not only to passengers and crew, but also to ground victims.**

**INTERROGATORY NO. 3:** To whom do plaintiffs claim that any or all of the defendants owed a duty to provide security? Do plaintiffs claim that any or all of the defendants owed such a duty to persons and things to whom defendants had no contractual relationship and if so, do plaintiffs claim that this duty was the same? Set forth the basis for any such claims. Respond separately as to each defendant.

6

**RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for a legal conclusion as to the duty owed by defendants, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure. Without waiving their objections, and subject to them, WTCP Cross-Claim Plaintiffs are within the classes of persons to whom defendants owed a duty of care. By way of further response to this Interrogatory, defendants are referred to the Opinion of this Court dated September 9, 2003.**

INTERROGATORY NO. 4: Do plaintiffs claim that any or all of the defendants had a duty to provide 100% screening of prohibited and/or restricted items and, if not, what percentage of these items do plaintiffs claim the defendants should have "reasonably" detected? Set forth the basis for any such claims. Respond separately as to each defendant.

**RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for a legal conclusion as to the duty owed by defendants, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure. Without waiving their objections, and subject to them, WTCP Cross-**

Claim Plaintiffs respond that defendants owed a duty to exercise the degree of care required under the circumstances including the duty to comply with all applicable provisions of law, including Section 2A of the ACSSP.

INTERROGATORY NO. 5:  Do plaintiffs claim that any or all of the defendants breached a duty to anyone or anything by only using screening equipment and flight deck doors that were certified and approved by the FAA?  If so, set forth the basis for any such claims.  Respond separately as to each defendant.

RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein.  WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for a legal conclusion, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure.  Without waiving these objections and subject to them, WTCP Cross-Claim Plaintiffs respond that the FAA set minimum standards, and the Defendants owed a duty to implement those protective measures they knew or should have known were required under the circumstances.

INTERROGATORY NO. 6:  What are the "reasonable measures to ensure the subject aircraft were safe and secure from danger," as alleged in paragraph 117 of the Complaint, which plaintiffs claim the defendants should have taken before September 11, 2001 but did not take?  Respond separately as to each defendant.

8

**RESPONSE:** WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein.  WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for a legal conclusion, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure.  Without waiving these objections and subject to them, WTCP Cross-Claim Plaintiffs respectfully refer defendants to the allegations made in their Master Complaints, and state further that the measures defendants failed to implement to ensure the subject aircraft were safe and secure from danger included but are not limited to:

Failing to adequately develop, operate, maintain, supervise and control an airline and airport security system that would ensure the safety of and protect passengers and the public, including WTCP Cross-Claim Plaintiffs, against criminal violence, air piracy and terrorism;

Failing to adequately train, staff and equip the subject airports' airline and airport security systems;

Failing to improve and/or heighten airline and airport security despite knowledge and prior warnings of numerous security deficiencies, breaches, lapses, and criminal and terrorist threats to airline security;

Failing to maintain watch lists of suspected terrorist, hijackers and other persons who could be considered a threat;

Failing to prevent unauthorized persons from gaining and exercising physical control of the aircraft;

Failing to follow appropriate procedures for responding to attacks upon flight crew by passengers;

Failing to properly screen and/or profile the hijackers, allowing them aboard the subject aircraft and allowing them to bring dangerous weapons onto the subject aircraft;

Failing to prevent entry into the sterile area of items that were not supposed to get past the security checkpoint;

Failing to adhere to proper security procedures, including FAA and internal airline/security guidelines, and other security directives;

Failing to properly scrutinize the hijackers' tickets, identification documents and ticket purchase information and failing to follow appropriate procedures for asking required security questions;

Failing to properly monitor security checkpoints, x-ray machines, metal detectors and hand wands;

Failing to install state of the art security equipment and systems to prevent hijacking and the boarding of persons constituting a threat to airline safety, and routinely failing to detect dangerous weapons in undercover investigations;

Failing to maintain security equipment and systems in proper working order;

Failing to adequately protect the subject aircraft cockpits from unauthorized entry;

Failing to prevent the hijackers from entering the cockpits;

Failing to implement adequate safety and security measures to prevent hijacking or other criminal acts;

Failing to equip the aircraft with secure cockpit doors and adequate locking mechanisms;

Failing to prevent armed terrorists from gaining access to the aircraft, bringing weapons and dangerous items onto the aircraft and crashing those aircraft into the World Trade Center;

Failing to prevent terrorists from gaining access to airplanes with items that were prohibited in the sterile area and known to present a danger, including mace and/or pepper spray, prohibited knives, box cutters, and real and/or fake bombs; and

Being otherwise negligent, engaging in conduct that was negligent per se, reckless, wrongful, unlawful, careless, willful and/or in conscious disregard of the rights and property of the crew and passengers, and persons and property on the ground, including WTCP Cross-Claim Plaintiffs.

WTCP Cross-Claim Plaintiffs reserve the right to amplify their response to this

Interrogatory as discovery progresses.

INTERROGATORY NO. 7:  What are the elements of the "adequate airline and airport security systems" at airports that plaintiffs claim the defendants should have developed, implemented and maintained before September 11, 2001 but failed to develop, implement and maintain, as alleged in paragraph 2 of the Complaint?  Respond separately as to each defendant.

**RESPONSE:  WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein.  WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for a legal conclusion, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure.  Without waiving these objections and subject to them, WTCP Cross-Claim Plaintiffs respectfully refer defendants to the allegations made in the various complaints filed 21 MC 97 and 21 MC 101, and state that measures defendants failed to implement to ensure the subject aircraft were safe and secure from danger included:**

> **Failing to adequately develop, operate, maintain, supervise and control an airline and airport security system that would ensure the safety of and protect passengers and the public, including WTCP Cross-Claim Plaintiffs, against criminal violence, air piracy and terrorism;**

> **Failing to adequately train, staff and equip the subject airports' airline and airport security systems;**

> **Failing to improve and/or heighten airline and airport security despite knowledge and prior warnings of numerous security deficiencies, breaches, lapses, and criminal and terrorist threats to airline security;**

> **Failing to maintain watch lists of suspected terrorist, hijackers and other persons who could be considered a threat;**

Failing to prevent unauthorized persons from gaining and exercising physical control of the aircraft;

Failing to follow appropriate procedures for responding to attacks upon flight crew by passengers;

Failing to properly screen and/or profile the hijackers, allowing them aboard the subject aircraft and allowing them to bring dangerous weapons onto the subject aircraft;

Failing to prevent entry into the sterile area of items that were not supposed to get past the security checkpoint;

Failing to adhere to proper security procedures, including FAA and internal airline/security guidelines, and other security directives;

Failing to properly scrutinize the hijackers' tickets, identification documents and ticket purchase information and failing to follow appropriate procedures for asking required security questions;

Failing to properly monitor security checkpoints, x-ray machines, metal detectors and hand wands;

Failing to install state of the art security equipment and systems to prevent hijacking and the boarding of persons constituting a threat to airline safety, and routinely failing to detect dangerous weapons in undercover investigations;

Failing to maintain security equipment and systems in proper working order;

Failing to adequately protect the subject aircraft cockpits from unauthorized entry;

Failing to prevent the hijackers from entering the cockpits;

Failing to implement adequate safety and security measures to prevent hijacking or other criminal acts;

Failing to equip the aircraft with secure cockpit doors and adequate locking mechanisms;

Failing to prevent armed terrorists from gaining access to the aircraft, bringing weapons and dangerous items onto the aircraft and crashing those aircraft into the World Trade Center;

Failing to prevent terrorists from gaining access to airplanes with items that were prohibited in the sterile area and known to present a danger, including mace and/or pepper spray, prohibited knives, box cutters, and real and/or fake bombs; and

Being otherwise negligent, engaging in conduct that was negligent per se, reckless, wrongful, unlawful, careless, willful and/or in conscious disregard of the rights and property of the crew and passengers, and persons and property on the ground, including WTCP Cross-Claim Plaintiffs.

WTCP Cross-Claim Plaintiffs reserve the right to amplify their response to this Interrogatory as discovery progresses.

INTERROGATORY NO. 8: Describe the "adequate safety and security measures" and "proper screen[ing] and/or profil[ing]" which would have prevented the hijackers from boarding "the subject aircraft with dangerous weapons" and that plaintiffs claim the defendants should have implemented before September 11, 2001, but failed to implement as alleged in paragraphs 119(d) and (k) of the Complaint? Respond separately as to each defendant.

RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for a legal conclusion, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure. Without waiving their objections and subject to them, WTCP Cross-Claim Plaintiffs respectfully refer defendants, *inter alia,* to the Air Carrier Standard Security Program, Checkpoint Operations Guide, and 49 U.S.C. 44902(b).

**INTERROGATORY NO. 12:**  What actions do plaintiffs contend defendants should have taken, or were required to take, but failed to take prior to September 11, 2001 to respond to the information identified in response to Interrogatory Numbers 10 and 11? Respond separately as to each defendant.

**RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein, as well as all objections set forth in response to Interrogatory Numbers 10 and 11.  WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for legal conclusions, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure.  Without waiving their objections and subject to them, WTCP Cross-Claim Plaintiffs respond that defendants failed to detect or adequately facilitate detecting any of nineteen hijackers boarding flights that defendants were responsible for securing, failed to prevent any of the nineteen hijackers from bringing weapons and prohibited items onto the aircraft, and failed to prevent such hijackers from commandeering the aircraft and crashing them into the World Trade Center, the Pentagon, and the field in Shanksville, Pennsylvania.**

Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for legal conclusions, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure.

INTERROGATORY NO. 29: What actions do plaintiffs contend defendants should have taken but failed to take and/or what actions do plaintiffs contend defendants took but negligently performed, with respect to the check-in or ticketing procedures applied to the terrorists on September 11, 2001? Respond separately as to each defendant.

RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for legal conclusions, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure.

INTERROGATORY NO. 30: Do plaintiffs claim that defendants acted in a negligent or improper manner in processing Mohammad Atta's or Abdulaziz al Omari's baggage at Portland International Jetport on September 11, 2001. If so, state all facts that support plaintiffs' claims. Respond separately as to each defendant.

**RESPONSE:** WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for legal conclusions, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure. Without waiving their objections and subject to them, WTCP Cross-Claim Plaintiffs respond as follows: Yes. Given the facts surrounding the check-in of Atta and al Omari, including suspicions of U.S. Airways' ticket agent at check-in, Atta's and al Omari's baggage should have been inspected and these bags and passengers should have been denied boarding pursuant to 49 U.S.C. 44902(b), whereby the air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety.

**INTERROGATORY NO. 31:** What actions do plaintiffs contend defendants should have taken but failed to take with respect to the application of the CAPPS program to the terrorists on September 11, 2001? Respond separately as to each defendant.

**RESPONSE:** WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for legal conclusions, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for

INTERROGATORY NO. 36:  What actions do plaintiffs claim defendants should have taken before September 11, 2001 but failed to take to protect the hijacked aircrafts' cockpit from unauthorized entry, as alleged in paragraph 119 of the Complaint?  Respond separately as to each defendant.

**RESPONSE:  WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein.  WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for legal conclusions, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure.  Without waiving their objections and subject to them, WTCP Cross-Claim Plaintiffs respond that in addition to the measures stated heretofore, defendants should have exercised the degree of care required by law, including regulatory provisions requiring that hijackers not be given unauthorized access to the cockpit, and that cockpit doors be sufficiently strong and secure to prevent forced or unauthorized entry.**

INTERROGATORY NO. 37:  What actions do plaintiffs claim defendants should have taken before September 11, 2001 but failed to take to prevent the terrorists from entering the hijacked aircrafts' flight deck, as alleged in paragraph 119 of the Complaint?  Respond separately as to each defendant.

**RESPONSE:  WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein.  WTCP Cross-Claim Plaintiffs further object upon the grounds the**

INTERROGATORY NO. 39:   Do plaintiffs claim that any of the actions or omissions taken by defendants on September 11, 2001 violated the Common Strategy as set forth in the appendices to the Air Carrier Standard Security Programs of American Airlines and United Airlines?  If so, identify the specific actions or omissions that violated the Common Strategy.  State all facts and the source of each fact that plaintiffs rely on in making such allegations.  Respond separately as to each defendant.

**RESPONSE: WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein.  WTCP Cross-Claim Plaintiffs further object upon the grounds the Interrogatory is vague, ambiguous and defective in its form, it is an improper contention interrogatory, it improperly calls for legal conclusions, it calls for information that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony, and it violates Rules 33.3 (b) and (c) of the Local Rules and Rule 33(a) of the Federal Rules of Civil Procedure.  WTCP Cross-Claim Plaintiffs also object to the Interrogatory insofar as it may be deemed to suggest that any compliance with the Common Strategy is a defense to WTCP Cross-Claim Plaintiffs' claims.  Without waiving their objections and subject to them, WTCP Cross-Claim Plaintiffs respond that Defendants breached their duty of care by, among other things, employing procedures that were no longer appropriate given the existing threat to civil aviation.  WTCP Cross-Claim Plaintiffs do not presently have full access to the ACSSP, have received virtually no discovery on the "Common Strategy" and therefore reserve their right to amplify their response to this Interrogatory.**

additional discovery, it improperly calls for information that will be the subject of expert testimony and violates Rules 33.3 (b) of the Local Rules of the Southern District of New York. WTCP Cross-Claim Plaintiffs further note the paucity of information produced by Defendants to date on the subject matter of this Interrogatory.

INTERROGATORY NO. 48: What training do plaintiffs contend should have been provided to the cabin crew and/or the flight crew on the hijacked aircraft to prevent the September 11, 2001 hijacking? Respond separately as to each flight.

RESPONSE: WTCP Cross-Claim Plaintiffs need not respond to this Interrogatory which violates Rule 33(a) of the Federal Rules of Civil Procedure. WTCP Cross-Claim Plaintiffs incorporate all general objections as if fully set forth herein. WTCP Cross-Claim Plaintiffs further object upon the grounds this Interrogatory is unduly burdensome, calls for a degree of specificity that cannot be supplied at this time without the benefit of additional discovery, it improperly calls for information that will be the subject of expert testimony and violates Rules 33.3 (b) of the Local Rules of the Southern District of New York. WTCP Cross-Claim Plaintiffs further note the paucity of information produced by Defendants to date on the subject matter of this Interrogatory. Without waiving their objections and subject to them, WTCP Cross-Claim Plaintiffs respond as follows: the cabin crews and/or flight crews should have received training consistent with the known threat to civil aviation on September 11, 2001, including training that would have allowed them to respond or react to the hijackings that occurred on September 11th and the threat to civil aviation that existed at that time.

272

Exhibit 5

M. Bradford Stein (MS-9510)
FLEMMING, ZULACK & WILLIAMSON, LLP
One Liberty Plaza, 35th Floor
New York, New York  10006-1404
(212) 412-9500


Attorneys for Defendant-Cross-Claim Plaintiff:
    World Trade Center Properties LLC;
Additional Cross-Claim Plaintiffs:
      1 World Trade Center LLC
      5 World Trade Center LLC
      7 World Trade Company, L.P.


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                              :

In re SEPTEMBER 11, 2001 LITIGATION    :     21 MC 97 (AKH)
                              :
-------------------------------------------------------X    **Jury Trial Demanded**


## AMENDED CROSS-CLAIMS BY THE WTCP ENTITIES AGAINST CERTAIN DEFENDANTS IN PLAINTIFFS' AMENDED FLIGHT 11 MASTER LIABILITY COMPLAINT

### Preliminary Statement

1.     Defendant and cross-claim plaintiff World Trade Center Properties LLC ("WTC

Properties LLC") and additional cross-claim plaintiffs 1 World Trade Center LLC, 5 World

Trade Center LLC and 7 World Trade Company, L.P. (all four entities are collectively referred to

as "the cross-claim plaintiffs" or "The WTCP Entities"), by their attorneys Flemming, Zulack &

Williamson, LLP, hereby cross-claim against certain of the defendants (collectively referred to as

"the cross-claim defendants"), see ¶¶ 11-40, *infra,* that are named in "Plaintiffs' Amended Flight

11 Master Liability Complaint," dated March 31, 2004 (the "complaint").

## CROSS-CLAIM ONE FOR NEGLIGENCE

## THE WTCP ENTITIES AGAINST THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS AND MASSPORT

41.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

42.    Upon information and belief, on and prior to September 11, 2001, THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY DEFENDANTS and MASSPORT, through their agents, servants, officers, employees, designees and/or contractors, jointly and severally, undertook and did develop, implement, own, operate, manage, supervise, staff, equip, maintain, control and/or oversee the airline and airport security systems at the Portland Jetport and Logan Airport (including, but not limited to, passenger screening, security checkpoint operations, pre-boarding passenger and luggage inspections, controlling access to secure areas and other security activities, ticketing purchase and check-in procedures and passenger identification and document checks for aircrafts and flights), to ensure the safety of air passengers and the non-passenger public on the ground from, *inter alia*, harm as the result of hijackings and intentional crashes. As such, they owed the cross-claim plaintiffs a duty to establish, operate, and maintain such security systems in a non-negligent and non-reckless manner.

43.    On and prior to September 11, 2001, the United States Department of Transportation, through the Federal Aviation Administration, licensed THE AIRLINE CROSS-CLAIM DEFENDANTS and THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS as commercial air common carriers that were authorized to transport passengers for hire. Pursuant to this license each had a legal obligation to comply with all federal statutes,

rules, regulations and environmental directives. Each had a duty, both jointly and severally, to maintain the highest degree of care when providing airport and airline security to protect both their passengers and the general public (including the cross-claim plaintiffs herein) from harm as a result of the hijacking of and intentional crash of an aircraft.

44.    Upon information and belief, AMERICAN was, on and prior to September 11, 2001, a common carrier engaged in the business of transporting passengers by air and was operating regularly scheduled flights from Portland Jetport and Logan Airport. AMERICAN operated a Boeing 767 aircraft, registration no. N334AA, designated as Flight 11 ("Flight 11"), which departed from Logan Airport with an intended destination of Los Angeles International Airport, California. Flight 11 was hijacked and thereafter intentionally crashed by the hijackers into One World Trade Center on September 11, 2001. The crash destroyed that building along with the nearby buildings, Five World Trade Center and Seven World Trade Center.

45.    Upon information and belief, on September 11, 2001, COLGAN and US AIRWAYS were common carriers engaged in the business of transporting passengers by air and were operating regularly scheduled flights from Portland Jetport and Logan Airport.

46.    Upon information and belief, on September 11, 2001, COLGAN, operating as US Airways Flight 5930, a regularly scheduled passenger flight for hire, carried certain of the American Flight 11 hijackers from Portland Jetport to Logan Airport. COLGAN's aircraft displayed a US AIRWAYS logo, trade dress, paint scheme and livery, under the full actual and apparent authority, knowledge and consent of US AIRWAYS.

47.    Upon information and belief, COLGAN and US AIRWAYS are jointly, severally and contractually responsible by and through their agents, employees and contractors, for maintaining the airline and airport security systems at Portland Jetport and Logan Airport.

11

48.     Upon information and belief, on and before September 11, 2001, THE

SECURITY COMPANY CROSS-CLAIM DEFENDANTS were corporations or entities, who

under the authority and the direction of THE AIRLINE CROSS-CLAIM DEFENDANTS, THE

NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, and MASSPORT, engaged in the

business of, and separately and collectively assumed responsibility for, implementing,

developing, owning, operating, managing, maintaining and supervising the airline and airport

security systems at Portland Jetport and Logan Airport.

49.     Upon information and belief, on and prior to September 11, 2001, THE

SECURITY COMPANY CROSS-CLAIM DEFENDANTS and MASSPORT, by their

respective officers, agents, employees, servants and/or representatives selected, hired, trained,

instructed and supervised the security checkpoint screeners, metal detector and x-ray machine

monitors and others who operated, maintained and controlled the security checkpoints at

Portland Jetport and/or Logan Airport.

50.     On September 11, 2001, hijackers penetrated the airline and airport security

systems, including the screening systems at the Portland Jetport and Logan Airport that were

designed to prevent weapons from being taken onto aircraft. The hijackers, nevertheless, were

able to board Flight 5930 and Flight 11, respectively, carrying dangerous and deadly weapons.

These hijackers entered the unprotected cockpit of Flight 11 and took control of the aircraft.

While under the control of the hijackers, the aircraft was operated in an unusual and extreme

manner. No system was in place that would have prevented the hijackers from operating the

aircraft or which would automatically notify the Cross-Claim Defendants or the government that

the authorized pilots were no longer in control of the aircraft. The hijackers were unimpeded in

their criminal act of crashing Flight 11 into One World Trade Center, which caused, *inter alia*,

12

the collapse and destruction of that building and the nearby buildings, Five World Trade Center and Seven World Trade Center.

51.    THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS, and MASSPORT each owed a duty to The WTCP Entities, as persons with a property interest in World Trade Center buildings, to take reasonably effective countermeasures to prevent persons from bringing weapons aboard an aircraft and from entering into the cockpit and taking over the flight controls of a commercial aircraft. They also owed a duty to The WTCP Entities to have a system in place that would automatically notify them and the government whenever unauthorized persons were flying the aircraft.

52.    THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS, and MASSPORT negligently and/or recklessly breached their joint and several duties owed to The WTCP Entities, which breaches proximately caused the injury and death of persons in and near One World Trade Center on September 11, 2001, and the destruction of One World Trade Center, Five World Trade Center and Seven World Trade Center. They were negligent and reckless, *inter alia*, in failing to screen passengers to protect against weapons and/or potential weapons from being brought onto an aircraft, in failing to protect against unlawful entry by hijackers into the cockpit of Flight 11; in failing to protect against the hijackers flying the plane after they had gained entry; and in failing to install an automatic notification system to signal when the authorized pilots were no longer operating the aircraft.

53.    As a consequence, The WTCP Entities have been deprived, and continue to be deprived, of the use and benefit of their property interests, including but not limited to, the ability

to use the buildings and to receive the rental income therefrom, from September 11, 2001 until

the office space is rebuilt and rented. Therefore, THE AIRLINE CROSS-CLAIM

DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE

SECURITY COMPANY CROSS-CLAIM DEFENDANTS, and MASSPORT are jointly and

severally liable for all damages sustained by The WTCP Entities. The WTCP Entities are

entitled to recover their damages from them to the full extent allowed under applicable federal

and state law.

### CROSS-CLAIM TWO FOR NEGLIGENT SELECTION

### THE WTCP ENITITES AGAINST THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS AND MASSPORT

54.    Each and every allegation contained in each of the foregoing paragraphs is

realleged as if fully set forth herein.

55.    THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER

CROSS-CLAIM AIRLINE DEFENDANTS, and MASSPORT had, on and before September 11,

2001, a nondelegable duty to the traveling public and to The WTCP Entities to exercise

reasonable care in the selection of a competent and reasonably careful security system

contractor(s).

56.    THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER

AIRLINE CROSS-CLAIM DEFENDANTS, and MASSPORT breached this duty when they

employed THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS to work as security

system contractors at Portland Airport and Logan Airport.

57.    Upon information and belief, THE SECURITY COMPANY CROSS-CLAIM

DEFENDANTS had a well-documented record of incompetent and careless operation and

maintenance of their contractual security service operations over many years, according to the FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

58.    The failure of THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, and MASSPORT to exercise reasonable care to select competent and careful security system contractors was a proximate cause of the hijacking and crash of Flight 11 on September 11, 2001, of the personal injuries and wrongful deaths sustained by persons in and near One World Trade Center on September 11th, and of the destruction of One World Trade Center, Five World Trade Center and Seven World Trade Center.

59.    As a consequence, The WTCP Entities have been deprived, and continue to be deprived, of the use and benefit of their property interests, including but not limited to, the ability to use the buildings and to receive the rental income therefrom, from September 11, 2001 until the office space is rebuilt and rented. Therefore, THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, and MASSPORT are jointly and severally liable for all damages sustained by The WTCP Entities. The WTCP Entities are entitled to recover their damages from them to the full extent allowed under applicable federal and state law.

## CROSS-CLAIM THREE BASED ON *RES IPSA LOQUITUR*

### THE WTCP ENTITIES AGAINST THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS AND MASSPORT

60.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

entitled to recover these damages from them to the full extent allowed under applicable federal and state law.

## CROSS-CLAIM FIVE FOR NEGLIGENT DESIGN AND/OR MANUFACTURE

### THE WTCP ENTITIES AGAINST THE
### BOEING COMPANY, AMERICAN AND AMR

70.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

71.    Upon information and belief, on and before September 11, 2001 BOEING was engaged in the business of designing and manufacturing aircraft to be used to transport passengers and crew by common carriers throughout the world. The aircraft, including the cockpit environment, cockpit doors and cockpit locking mechanisms used for AMERICAN Flight 11 on September 11, 2001 were designed by AMERICAN, operating under the control of AMR, in conjunction with BOEING, and were manufactured by BOEING in accordance with the design specifications. Additionally, AMERICAN, under the control of AMR, in conjunction with BOEING designed the systems used to operate the aircraft. BOEING manufactured these systems according to the design specifications.

72.    AMERICAN and AMR owed the public, including The WTCP Entities, a duty to design the aircraft used in Flight 11, and BOEING owed the public, including The WTCP Entities, a duty to design and manufacture the aircraft used in Flight 11, in a way that hijackers could not gain access to the cockpit and/or could not take control of and fly the aircraft. Moreover, AMERICAN, AMR, and BOEING owed the public, including The WTCP Entities, a duty to design and manufacture, respectively, a system that would, if hijackers succeeded in unlawfully operating and flying the aircraft, automatically notify AMERICAN and the government that unauthorized persons were in operational control of the aircraft.

19

73.    AMERICAN, AMR and BOEING negligently and recklessly breached their respective duties by defectively designing and manufacturing the cockpit and flight deck environment, including the door and accompanying locks, in a way that hijackers could gain entry and operate the aircraft. Alternative and safer designs were available for a nominal increase in cost that would have prevented the hijackers from gaining access to the cockpit on Flight 11 and taking charge of the aircraft's controls. AMERICAN, AMR and BOEING also negligently and recklessly breached their respective duties by defectively designing and manufacturing the aircraft's systems without putting in place a system that would automatically notify AMERICAN and the government when unauthorized persons were flying the aircraft. Alternative designs were available for a nominal increase in cost that would have automatically notified AMERICAN and the government that unauthorized persons were illegally flying the aircraft.

74.    AMERICAN, AMR, and BOEING's negligent and reckless design and/or manufacture of the 767 aircraft used for Flight 11 were proximate causes of the destruction of The WTCP Entities' property interests at the World Trade Center on September 11, 2001.

75.    As a consequence, The WTCP Entities have been deprived, and continue to be deprived, of the use and benefit of their property interests, including but not limited to, the ability to use the buildings and to receive the rental income therefrom, from September 11, 2001 until the office space is rebuilt and rented. Therefore, AMERICAN, AMR, and THE BOEING COMPANY are jointly and severally liable for all damages sustained by The WTCP Entities. The WTCP Entities are entitled to recover these damages from them to the full extent allowed under applicable federal and state law.

Exhibit 6

M. Bradford Stein (MS-9510)
FLEMMING, ZULACK & WILLIAMSON, LLP
One Liberty Plaza, 35th Floor
New York, New York  10006-1404
(212) 412-9500

Attorneys for Defendant-Cross-Claim Plaintiff:
     World Trade Center Properties LLC;
Additional Cross-Claim Plaintiffs:
     2 World Trade Center LLC
     4 World Trade Center LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                      :

In re SEPTEMBER 11, 2001 LITIGATION    :     21 MC 97 (AKH)

                                        :     **Jury Trial Demanded**
--------------------------------------------------------X

## CROSS-CLAIMS BY THE WTCP ENTITIES
## AGAINST CERTAIN DEFENDANTS IN PLAINTIFFS'
## AMENDED FLIGHT 175 MASTER LIABILITY COMPLAINT

### Preliminary Statement

1.     Defendant and cross-claim plaintiff World Trade Center Properties LLC ("WTC

Properties LLC") and additional cross-claim plaintiffs 2 World Trade Center LLC and 4 World

Trade Center LLC (all three entities are collectively referred to as "the cross-claim plaintiffs"

or "The WTCP Entities"), by their attorneys Flemming, Zulack & Williamson, LLP, hereby

cross-claim against certain of the defendants (collectively referred to as "the cross-claim

defendants"), see ¶¶ 10-40, *infra,* that are named in "Plaintiffs' Amended Flight 175 Master

Liability Complaint," dated March 31, 2004 (the "complaint").

## CROSS-CLAIM ONE FOR NEGLIGENCE

### THE WTCP ENTITIES AGAINST THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS AND MASSPORT

41.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

42.    Upon information and belief, on and prior to September 11, 2001, THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY DEFENDANTS and MASSPORT, through their agents, servants, officers, employees, designees and/or contractors, jointly and severally, undertook and did develop, implement, own, operate, manage, supervise, staff, equip, maintain, control and/or oversee the airline and airport security systems at the Portland Jetport and Logan Airport (including, but not limited to, passenger screening, security checkpoint operations, pre-boarding passenger and luggage inspections, controlling access to secure areas and other security activities, ticketing purchase and check-in procedures and passenger identification and document checks for aircrafts and flights), to ensure the safety of air passengers and the non-passenger public on the ground from, *inter alia*, harm as the result of hijackings and intentional crashes. As such, they owed the cross-claim plaintiffs a duty to establish, operate, and maintain such security systems in a non-negligent and non-reckless manner.

43.    On and prior to September 11, 2001, the United States Department of Transportation, through the Federal Aviation Administration, licensed THE AIRLINE CROSS-CLAIM DEFENDANTS and THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS as commercial air common carriers that were authorized to transport passengers for hire. Pursuant to this license each had a legal obligation to comply with all federal statutes,

10

rules, regulations and environmental directives. Each had a duty, both jointly and severally, to maintain the highest degree of care when providing airport and airline security to protect both their passengers and the general public (including the cross-claim plaintiffs herein) from harm as a result of the hijacking of and intentional crash of an aircraft.

44.    Upon information and belief, UNITED was, on and prior to September 11, 2001, a common carrier engaged in the business of transporting passengers by air and was operating regularly scheduled flights from Portland Jetport and Logan Airport. UNITED operated the flight designated as Flight 175 ("Flight 175"), which departed from Logan Airport. Flight 175 was hijacked and thereafter intentionally crashed by the hijackers into Two World Trade Center on September 11, 2001. The crash destroyed that building along with the nearby building Four World Trade Center.

45.    Upon information and belief, on September 11, 2001, COLGAN and US AIRWAYS were common carriers engaged in the business of transporting passengers by air and were operating regularly scheduled flights from Portland Jetport and Logan Airport.

46.    Upon information and belief, on September 11, 2001, COLGAN, operating as US Airways Flight 5930, a regularly scheduled passenger flight for hire, carried certain of the United Flight 175 hijackers from Portland Jetport to Logan Airport. COLGAN's aircraft displayed a US AIRWAYS logo, trade dress, paint scheme and livery, under the full actual and apparent authority, knowledge and consent of US AIRWAYS.

47.    Upon information and belief, COLGAN and US AIRWAYS are jointly, severally and contractually responsible by and through their agents, employees and contractors, for maintaining the airline and airport security systems at Portland Jetport and Logan Airport.

48.    Upon information and belief, on and before September 11, 2001, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS were corporations or entities, who under the authority and the direction of THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, and MASSPORT, engaged in the business of, and separately and collectively assumed responsibility for, implementing, developing, owning, operating, managing, maintaining and supervising the airline and airport security systems at Portland Jetport and Logan Airport.

49.    Upon information and belief, on and prior to September 11, 2001, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS and MASSPORT, by their respective officers, agents, employees, servants and/or representatives selected, hired, trained, instructed and supervised the security checkpoint screeners, metal detector and x-ray machine monitors and others who operated, maintained and controlled the security checkpoints at Portland Jetport and/or Logan Airport.

50.    On September 11, 2001, hijackers penetrated the airline and airport security systems, including the screening systems at the Portland Jetport and Logan Airport that were designed to prevent weapons from being taken onto aircraft.  The hijackers, nevertheless, were able to board Flight 5930 and Flight 175, respectively, carrying dangerous and deadly weapons. These hijackers entered the unprotected cockpit of Flight 175 and took control of the aircraft. While under the control of the hijackers, the aircraft was operated in an unusual and extreme manner.  No system was in place that would have prevented the hijackers from operating the aircraft or which would automatically notify the cross-claim defendants or the government that the authorized pilots were no longer in control of the aircraft.  The hijackers were unimpeded in

their criminal act of crashing Flight 175 into Two World Trade Center, which caused, *inter alia*, the collapse and destruction of that building and the nearby building Four World Trade Center.

51.    THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS, and MASSPORT each owed a duty to The WTCP Entities, as persons with a property interest in World Trade Center buildings, to take reasonably effective countermeasures to prevent persons from bringing weapons aboard an aircraft and from entering into the cockpit and taking over the flight controls of a commercial aircraft. They also owed a duty to The WTCP Entities to have a system in place that would automatically notify them and the government whenever unauthorized persons were flying the aircraft.

52.    THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS, and MASSPORT negligently and/or recklessly breached their joint and several duties owed to The WTCP Entities, which breaches proximately caused the injury and death of persons in and near Two World Trade Center on September 11, 2001, and the destruction of Two World Trade Center and Four World Trade Center. They were negligent and reckless, *inter alia*, in failing to screen passengers to protect against weapons and/or potential weapons from being brought onto an aircraft, in failing to protect against unlawful entry by hijackers into the cockpit of Flight 175; in failing to protect against the hijackers flying the plane after they had gained entry; and in failing to install an automatic notification system to signal when the authorized pilots were no longer operating the aircraft.

53.    As a consequence, The WTCP Entities have been deprived, and continue to be deprived, of the use and benefit of their property interests, including but not limited to, the ability

to use the buildings and to receive the rental income therefrom, from September 11, 2001 until

the office space is rebuilt and rented. Therefore, THE AIRLINE CROSS-CLAIM

DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE

SECURITY COMPANY CROSS-CLAIM DEFENDANTS, and MASSPORT are jointly and

severally liable for all damages sustained by The WTCP Entities. The WTCP Entities are

entitled to recover their damages from them to the full extent allowed under applicable federal

and state law.

## CROSS-CLAIM TWO FOR NEGLIGENT SELECTION

### THE WTCP ENITITES AGAINST THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS AND MASSPORT

54.    Each and every allegation contained in each of the foregoing paragraphs is

realleged as if fully set forth herein.

55.    THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER

CROSS-CLAIM AIRLINE DEFENDANTS, and MASSPORT had, on and before September 11,

2001, a nondelegable duty to the traveling public and to The WTCP Entities to exercise

reasonable care in the selection of a competent and reasonably careful security system

contractor(s).

56.    THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER

AIRLINE CROSS-CLAIM DEFENDANTS, and MASSPORT breached this duty when they

employed THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS to work as security

system contractors at Portland Airport and Logan Airport.

57.    Upon information and belief, THE SECURITY COMPANY CROSS-CLAIM

DEFENDANTS had a well-documented record of incompetent and careless operation and

maintenance of their contractual security service operations over many years, according to the FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

58.     The failure of THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, and MASSPORT to exercise reasonable care to select competent and careful security system contractors was a proximate cause of the hijacking and crash of Flight 175 on September 11, 2001, of the personal injuries and wrongful deaths sustained by persons in and near Two World Trade Center on September 11th, and of the destruction of Two World Trade Center and Four World Trade Center.

59.     As a consequence, The WTCP Entities have been deprived, and continue to be deprived, of the use and benefit of their property interests, including but not limited to, the ability to use the buildings and to receive the rental income therefrom, from September 11, 2001 until the office space is rebuilt and rented. Therefore, THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, and MASSPORT are jointly and severally liable for all damages sustained by The WTCP Entities. The WTCP Entities are entitled to recover their damages from them to the full extent allowed under applicable federal and state law.

## CROSS-CLAIM THREE BASED ON *RES IPSA LOQUITUR*

### THE WTCP ENTITIES AGAINST THE AIRLINE CROSS-CLAIM DEFENDANTS, THE NON-CARRIER AIRLINE CROSS-CLAIM DEFENDANTS, THE SECURITY COMPANY CROSS-CLAIM DEFENDANTS AND MASSPORT

60.     Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

**CROSS-CLAIM FIVE FOR NEGLIGENT DESIGN AND/OR MANUFACTURE**

**THE WTCP ENTITIES AGAINST THE**
**BOEING COMPANY, UNITED AND UAL**

70.     Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

71.     Upon information and belief, on and before September 11, 2001 BOEING was engaged in the business of designing and manufacturing aircraft to be used to transport passengers and crew by common carriers throughout the world.  The aircraft, including the cockpit environment, cockpit doors and cockpit locking mechanisms used for UNITED Flight 175 on September 11, 2001 were designed by UNITED, operating under the control of UAL, in conjunction with BOEING, and were manufactured by BOEING in accordance with the design specifications.  Additionally, UNITED, under the control of UAL, in conjunction with BOEING designed the systems used to operate the aircraft.  BOEING manufactured these systems according to the design specifications.

72.     UNITED and UAL owed the public, including The WTCP Entities, a duty to design the aircraft used in Flight 175, and BOEING owed the public, including The WTCP Entities, a duty to design and manufacture the aircraft used in Flight 175, in a way that hijackers could not gain access to the cockpit and/or could not take control of and fly the aircraft. Moreover, UNITED, UAL, and BOEING owed the public, including The WTCP Entities, a duty to design and manufacture, respectively, a system that would, if hijackers succeeded in unlawfully operating and flying the aircraft, automatically notify UNITED and the government that unauthorized persons were in operational control of the aircraft.

73.     UNITED, UAL and BOEING negligently and recklessly breached their respective duties by defectively designing and manufacturing the cockpit and flight deck environment,

19

including the door and accompanying locks, in a way that hijackers could gain entry and operate the aircraft. Alternative and safer designs were available for a nominal increase in cost that would have prevented the hijackers from gaining access to the cockpit on Flight 175 and taking charge of the aircraft's controls. UNITED, UAL and BOEING also negligently and recklessly breached their respective duties by defectively designing and manufacturing the aircraft's systems without putting in place a system that would automatically notify UNITED and the government when unauthorized persons were flying the aircraft. Alternative designs were available for a nominal increase in cost that would have automatically notified UNITED and the government that unauthorized persons were illegally flying the aircraft.

74.    UNITED, UAL, and BOEING's negligent and reckless design and/or manufacture of the Boeing aircraft used for Flight 175 were proximate causes of the destruction of The WTCP Entities' property interests at the World Trade Center on September 11, 2001.

75.    As a consequence, The WTCP Entities have been deprived, and continue to be deprived, of the use and benefit of their property interests, including but not limited to, the ability to use the buildings and to receive the rental income therefrom, from September 11, 2001 until the office space is rebuilt and rented. Therefore, UNITED, UAL, and THE BOEING COMPANY are jointly and severally liable for all damages sustained by The WTCP Entities. The WTCP Entities are entitled to recover these damages from them to the full extent allowed under applicable federal and state law.

## CROSS-CLAIM SIX FOR CONTRIBUTION

## WTC PROPERTIES LLC AGAINST THE CROSS-CLAIM DEFENDANTS

76.    Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.