UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

IN RE: SEPTEMBER 11, 2001 LITIGATION                21 MC 97 (AKH)

-----------------------------------------------------------------------X

## ANSWER TO PLAINTIFFS' FOURTH AMENDED FLIGHT 175 MASTER LIABLITY COMPLAINT

### (TWO WORLD TRADE CENTER CRASH)

The Defendants, UNITED AIR LINES, INC. and UAL CORPORATION (hereinafter collectively referred to as "UNITED"), set forth the following as and for their Answer to Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint, subject to the prohibition against disclosure of any Sensitive Security Information pursuant to 49 CFR 1520.3, 49 CFR 1520.4 and USC §40119:

### BACKGROUND

UNITED and UAL respond that the background statement in Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint are not allegations that require a response.  To the extent Plaintiffs' background statement contains allegations, UNITED and UAL deny each and every allegation set forth in Plaintiffs' background statement and respectfully refer all matters of law set forth therein to the Court, except admit that on September 11, 2001, UNITED designated a BOEING 767 aircraft, with registration number N612UA, to transport passengers as United Air Lines Flight 175 ("Flight 175") originating from Boston Logan International Airport, and that at some point after push back from the gate, operational control of the aircraft was seized by suicidal terrorists. UNITED and UAL further deny knowledge and information sufficient to form a belief as to each and every allegation directed towards Defendant BOEING, except admit that

the BOEING 767 aircraft, registration number N612UA was certified to meet Federal Aviation Administration airworthiness standards.

## JURISDICTION AND VENUE

1.      Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "1" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that Public Law 107-42, "The Air Transportation Safety and System Stabilization Act" establishes that "[t]he United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001.

2.      Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "2" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

3.      Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "3" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

4.      Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "4" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

## THE PARTIES

### PLAINTIFFS

5.      Admit the allegations contained in paragraph "5" of the Plaintiffs' Fourth Amended Flight 175 Master Complaint, except as to Plaintiff decedent ALICIA TITUS, who was a UNITED Flight Attendant on board Flight 175.

6.      Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "6" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

7.      Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "7" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

### "THE AIRLINE DEFENDANTS"

8.      Admit the allegations contained in paragraph "8" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint.

9.      Admit the allegations contained in paragraph "9" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint to the extent that UAL is the parent corporation of its wholly-owned subsidiary UNITED, and UNITED is engaged in the air transportation of passenger for hire.

10.      Admit the allegations contained in paragraph "10" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint.

3

11.    Deny each and every allegation set forth in paragraph "11" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation Laws and Regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

12.    Deny each and every allegation set forth in paragraph "12" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

13.    Deny each and every allegation set forth in paragraph "13" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

14.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "14" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint, except admit that UNITED did regularly operate Flight 175, and on September 11, 2001, designated a Boeing 767 aircraft, registration number N612UA, to transport passengers on that flight and that at some point, after push back from the gate, operational control of the aircraft was seized by suicidal terrorists.

15.    Deny each and every allegation set forth in paragraph "15" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

## THE NON-CARRYING AIRLINE DEFENDANTS

16.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "16" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

17.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "17" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

18.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "18" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

19.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "19" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

## THE SECURITY COMPANY DEFENDANTS

20.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "20" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

21.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "21" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

22.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "22" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

23.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "23" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

24.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "24" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

25.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "25" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

26.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "26" of Plaintiffs' Fourth Amended Flight 175

Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

27.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "27" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

28.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "28" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

29.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "29" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

30.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "30" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

31.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "31" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

32.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "32" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

33.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "33" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

34.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "34" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

35.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "35" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

36.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph numbered "36" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

## AIRPORT OPERATOR DEFENDANT

37.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "37" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

## THE BOEING DEFENDANT

38.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "38" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

39.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "39" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that the aircraft designated for the subject flight was a BOEING 767.

40.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "40" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that the aircraft designated for the subject flight was a BOEING 767.

## THE BUILDING OWNERS

41.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "41" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

42.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "42" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

43.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "43" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

### THE BULIDING DEFENANTS

44.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "44" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

45.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "45" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

46.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "46" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

47.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "47" of Plaintiffs' Fourth Amended Flight 175

Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

48.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "48" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

49.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "49" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

50.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "50" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

51.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "51" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

52.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "52" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

53.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "53" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

## GENERAL ALLEGATIONS

54.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph numbered "54" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

55.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "55" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

56.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "56" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

57.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "57" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

58.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "58" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

59.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "59" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

60.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "60" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

61.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "61" of Plaintiffs' Fourth Amended Flight 175

Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

62.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "62" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

63.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "63" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

64.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "64" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

65.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "65" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

66.     Deny each and every allegation set forth in paragraph "66" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that

UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

67.     Deny each and every allegation set forth in paragraph "67" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

68.     Deny each and every allegation set forth in paragraph "68" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

69.     Deny each and every allegation set forth in paragraph "69" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement

security plans or procedures required by same. UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

70.     Deny each and every allegation set forth in paragraph "70" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that meetings were held during which airport security was sometimes discussed.

71.     Deny each and every allegations set forth in paragraph "71" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same. UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

72.     Deny each and every allegation set forth in paragraph "72" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same. UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at

the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

73.    Deny each and every allegation set forth in paragraph "73" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

74.    Deny each and every allegation set forth in paragraph "74" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

75.    Deny each and every allegation set forth in paragraph "75" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that

UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

76.    Deny each and every allegation set forth in paragraph "76" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

77.    Deny each and every allegation set forth in paragraph "77" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

78.    Admit the allegations contained in paragraph "78" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint.

79.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "79" of Plaintiffs' Fourth Amended Flight 175

Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

80.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "80" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

81.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "81" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

82.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "82" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that the subject aircraft crashed after suicidal terrorists seized operational control of the subject aircraft.

83.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "83" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

84.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "84" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

85.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "85" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

86.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "86" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

87.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "87" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

88.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "88" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

89.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "89" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

90.     Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "90" of Plaintiffs' Fourth Amended Flight 175

Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

91.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "91" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

92.    Deny each and every allegation set forth in paragraph "92" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

## COUNT ONE

### CLAIMS FOR PERSONAL INJURIES, WRONGFUL DEATH AND SURVIVAL DAMAGES AGAINST THE AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE DEFENDANTS, THE SECURITY COMPANY DEFENDANTS, AND MASSPORT BASED ON NEGLIGENCE, NEGLIGENCE PER SE, RECKLESS CONDUCT, AND CONSCIOUS DISREGARD FOR RIGHTS <u>AND SAFETY</u>

93.    Defendants UNITED and UAL repeat, reiterate and reallege each and every response heretofore made to each and every paragraph of Plaintiffs' Fourth Amended Flight 175 Master Complaint, designated as paragraphs numbered "1" through "92" inclusive, with the same force and effect as through more fully set forth at length herein.

94.    Deny each and every allegation set forth in paragraph "94" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement

security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

95.    Deny each and every allegation set forth in paragraph "95" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

96.    Deny each and every allegation set forth in paragraph "96" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same.  UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

97.    Deny each and every allegation set forth in paragraph "97" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

98.    Deny knowledge and information sufficient to form a belief as to each and every allegation set forth in paragraph "98" of Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

99.    Deny each and every allegation set forth in paragraph "99" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

100.    Deny each and every allegation set forth in paragraph "100" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

101.    Deny each and every allegation set forth in paragraph "101" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

### COUNT TWO

**CLAIMS FOR PERSONAL INJURIES, WRONGFUL
DEATH AND SURVIVAL DAMAGES AGAINST THE
AIRLINE DEFENDANTS, THE NON-CARRYING AIRLINE
DEFENDANTS, AND MASSPORT BASED ON
<u>NEGLIGENCE SELECTION</u>**

102.    Defendants UNITED and UAL repeat, reiterate and reallege each and every response heretofore made to each and every paragraph of Plaintiffs' Fourth Amended Flight 175 Master Complaint, designated as paragraphs numbered "1" through "101" inclusive, with the same force and effect as through more fully set forth at length herein.

103.    Deny each and every allegation set forth in paragraph "103" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all

matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same. UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

104. Deny each and every allegation set forth in paragraph "104" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

105. Deny each and every allegation set forth in paragraph "105" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court, except admit that UNITED had a duty to operate its flights in accordance with Federal Aviation laws and regulations and to implement security plans or procedures required by same. UNITED and UAL further admit that UNITED had a contract with HUNTLEIGH to provide security checkpoint screening at the Pier B checkpoint in Terminal C used for UNITED flights at Logan Airport in Boston, Massachusetts on September 11, 2001.

106. Deny each and every allegation set forth in paragraph "106" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

107. Deny each and every allegation set forth in paragraph "107" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

108.    Deny each and every allegation set forth in paragraph "108" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

109.    Deny each and every allegation set forth in paragraph "109" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

110.    Deny each and every allegation set forth in paragraph "110" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

111.    Deny each and every allegation set forth in paragraph "111" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

112.    Deny each and every allegation set forth in paragraph "112" of the Plaintiffs' Fourth Amended Flight 175 Master Liability Complaint and respectfully refer all matters of law set forth therein to the Court.

**COUNT THREE**

**CLAIMS FOR PERSONAL INJURIES, WRONGFUL
DEATH AND SURVIVAL DAMAGES AGAINST
DEFENDANT BOEING BASED ON STRICT TORT
<u>LIABILITY</u>**

113.    Defendants UNITED and UAL repeat, reiterate and reallege each and every response heretofore made to each and every paragraph of Plaintiffs' Fourth Amended Flight 175 Master Complaint, designated as paragraphs numbered "1" through "112" inclusive, with the same force and effect as through more fully set forth at length herein.