UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – – – –   X

IN RE SEPTEMBER 11TH LITIGATION

And

IN RE SEPTEMBER 11TH PROPERTY DAMAGE AND
BUSINESS LOSS LITIGATION

Civil Nos.
21 MC 97 (AKH)
21 MC 101 (AKH)

THIS DOCUMENT RELATES
TO: 03 CV 7083 (AKH)
       03 CV 7084 (AKH)

Nassaney, et al. v. United Air
Lines, Inc., et al.

Sanchez v. United Air Lines, Inc.,
et al.

**DECLARATION OF
JEFFREY J. ELLIS**

– – – – – – – – – – – – – – – – – – – – – – – – – – –   X

     1.     I am an attorney and member of the law firm of Quirk and Bakalor, P.C., co-counsel for defendants United Air Lines, Inc. and UAL Corporation in this litigation and I am fully familiar with all prior pleadings and proceedings.

     2.     I submit this declaration in support of the motion by defendants United Air Lines, Inc., UAL Corporation and Huntleigh USA Corporation for Orders: (1) approving the settlements; (2) entering final judgments pursuant to Rule 54(b) of the Federal Rules of Civil Procedure; (3) ruling that the liability limitation contained in Section 408(a)(1) of the Air Transportation Safety and System Stabilization Act Applies to the Settlement Amounts; and (4) dismissing the Complaints with prejudice as to all defendants.

     3.     Annexed hereto as Exhibit "A" is a true and accurate copy of the executed Confidential Stipulation of Settlement in *Nassaney, et al. v. United Air Lines, Inc., et al.*, 03 CV

7083 (AHK) with the settlement amount redacted. An unredacted copy of the Confidential

Stipulation of Settlement is being filed with the Court under seal.

4.    Annexed hereto as Exhibit "B" is a true and accurate copy of the executed

Confidential Stipulation of Settlement in *Sanchez. v. United Air Lines, Inc., et al.,* 03 CV 7084

(AHK) with the settlement amount redacted. An unredacted copy of the Confidential

Stipulation of Settlement is being filed with the Court under seal.

Pursuant to 28 U.S.C. Section 1756, I declare under penalty of perjury under the laws of

the United States of America that the foregoing is true and correct, and that I executed this

declaration on December 19, 2007, at New York, New York.

_____

*Jeffrey J. Ellis*

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.: 21 MC 97 (AKH)

THIS DOCUMENT RELATES TO:
03 CV 7083

IN RE SEPTEMBER 11 LITIGATION

Nassaney, et al. v. United Airlines,
Inc., et. al.

## CONFIDENTIAL STIPULATION OF SETTLEMENT

By and through their attorneys, Defendants UNITED AIR LINES, INC.
(hereinafter "UNITED"), UAL CORPORATION (hereinafter "UAL"), and HUNTLEIGH
USA CORPORATION (hereinafter "HUNTLEIGH"), and plaintiffs, PATRICK JOHN
NASSANEY, SR. and MARGARET M. NASSANEY as Co-Representatives and on
behalf of Two SIBLINGS of the Estate of SHAWN M. NASSANEY, deceased
(hereinafter "PLAINTIFFS") hereby stipulate and agree:

1.    In consideration of the sum of ███████████████

████████████████████████████████████████████

███████████████████ to be paid by the Insurers of UNITED AIR LINES, INC.

(hereinafter "UNITED") and UAL CORPORATION (hereinafter "UAL"), and ██████████

████████████████████████████████████████████

██████████ the sum of ██████████████████████ to be paid by

the Insurers of HUNTLEIGH, for a total of the payments to PLAINTIFFS of ███████

██████████████████████ PLAINTIFFS hereby agree to release and

discharge UNITED, UAL, HUNTLEIGH, ICTS INTERNATIONAL NV and any and all

other defendants named in any of the individual or Master Complaints filed under civil

action number 21 MC 97 (AKH), and agree to execute a Confidential Release in the form attached hereto as Exhibit "1".

2.    PLAINTIFFS have expressed an intention and desire to use a portion of said total payments to provide a Cash Settlement and the balance of said payments to finance the purchase of an Annuity Contract which would provide the PLAINTIFFS, and/or the designated beneficiary of such Annuity Contract, Future Periodic Payments. The amount of Cash at Settlement and the amount of said payments that are to fund said Annuity Contract, together with the terms applicable to same, will be set forth and specified in the Confidential Release, in the form attached hereto as Exhibit "1."

3.    The parties to this Agreement recognize the legitimate interest of UNITED, UAL, and HUNTLEIGH in ensuring that the full amounts paid pursuant to this Agreement count against the limits on their respective liability established by Section 408(a)(1) of the Air Transportation Safety and System Stabilization Act ("ATSSSA"). UNITED, UAL, and HUNTLEIGH are not willing to enter into this Agreement absent that assurance.  The parties therefore agree that:

(a)    UNITED, UAL, and HUNTLEIGH shall have no obligations hereunder, unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts paid hereunder count against the limits of liability established by Section 408(a)(1)of ATSSSA; and

(b)    No settlement payments shall be made pursuant to this Agreement unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all

2

amounts to be paid hereunder count against the limits of liability established by Section 408(a)(1)of ATSSSA.

4.      Within 21 days after execution of this Confidential Stipulation of Settlement, UNITED, UAL, and HUNTLEIGH shall seek from the United States District Court for the Southern District of New York or an appropriate federal appellate court the non-appealable determination described in paragraph "3". The parties agree, and PLAINTIFFS specifically consent, that the motion for the non-appealable final determination will include a request that the Court dismiss with prejudice all proceedings by PLAINTIFFS against all UNITED, UAL, and HUNTLEIGH, and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each of the defendants listed in Appendix "A" to the Confidential Release in the form attached hereto as Exhibit "1" ("RELEASEES"), and all RELEASEES' parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities, officers, directors, employees, agents, heirs, executors, administrators, successors and assigns.

5.      Following execution of the Confidential Stipulation of Settlement, PLAINTIFFS shall submit to Judge Alvin K. Hellerstein a Motion for Compromise Order approving the settlement and the distribution of the settlement proceeds and authorizing PLAINTIFFS to execute and deliver a Confidential Release in the form attached hereto as Exhibit "1."

6.      PLAINTIFFS shall deliver to UNITED, UAL, and HUNTLEIGH's attorneys an executed Confidential Release in the form attached hereto as Exhibit "1". The

3

execution of said Confidential Release does not preclude the PLAINTIFFS from continuing any direct action filed against terrorists and/or sponsors of terrorism arising from or relating to the death of SHAWN M. NASSANEY, as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-1616 (USDC, District of Columbia (JR)); *In Re Terrorist Attacks of September 11, 2001*, 03 MDL 1570 (RCC); and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 03 CV 9849 (RCC).

7.      Subject to compliance with all conditions set forth above, within 30 days after the non-appealable determination described in paragraphs "3" and "4" is issued or within 30 days after receipt by counsel for UNITED, UAL, and HUNTLEIGH of the executed Confidential Release, whichever is later, UNITED, UAL, and HUNTLEIGH's insurers will pay to PLAINTIFFS the settlement funds as indicated in the Confidential Release. In the event that a court of competent jurisdiction declines to enter the final non-appealable determination referenced in paragraphs "3" and "4", this Confidential Stipulation of Settlement shall be void, and PLAINTIFFS shall be entitled to reinstate their case against the RELEASEES.

8.      The parties acknowledge that this agreement is entered into solely for the purpose of amicably resolving the parties' dispute and the parties specifically acknowledge and agree that this agreement does not constitute an admission of liability, responsibility, or proportionate responsibility by any party.

9.      This agreement and the performance thereunder shall be governed by and construed under the laws of the State of New York, without giving effect to its conflict of law provisions that would result in the application of the law of any other

4

jurisdiction.

10.    This Agreement may not be modified orally and can only be modified by means of a written agreement signed by the PLAINTIFFS, UNITED, UAL, HUNTLEIGH and ICTS INTERNATIONAL NV.

11.    The amount of the payments under this settlement shall remain confidential. Dissemination of the amount of payments under this settlement shall be restricted to only the parties, their attorneys, employees, agents, insurers, and insurance representatives who have a need to know the amount of the settlement, and to any court referenced in paragraphs "3" and "4". No party, attorney, employee, agent, insurer, or insurance representative of a party shall disclose the amount of the settlement unless required to do so by court order.

12.    This agreement may be executed in counterparts.

Dated:  New York, New York
        Nov. 17          , 2007

MOTLEY RICE LLC

By: _____
    Donald Migliori, Esq. (        )
    28 Bridgeside Boulevard
    Mt. Pleasant, South Carolina 29465
    Telephone: (843) 216-9000

*Attorneys for Plaintiffs, Patrick John Nassaney, Sr. and Margaret M. Nassaney*

QUIRK AND BAKALOR, P.C.

By: _____
    Jeffrey J. Ellis, Esq. (JJE 7796)
    845 Third Avenue, 15th Floor
    New York, New York  10022
    Telephone: (212) 319-1000

-and-

Michael R. Feagley, Esq.
MAYER BROWN, LLP
71 South Wacker Drive
Chicago, Illinois  60606
Telephone: (312) 701-7065

*Attorneys for Defendants
UNITED AIR LINES, INC. and
UAL CORPORATION*

5

SUSMAN GODFREY, LLP

By: _____
    H. Lee Godfrey, Esq. (HG 1204)
1000 Louisiana Street
Houston, Texas  77002-5096
Telephone: (713) 653-7857

*Attorneys for Defendant*
*HUNTLEIGH USA CORPORATION*


ACE GLOBAL MARKETS

By: _____
    John L. Larkins
    Aviation Claims Manager
ACE Global Markets
100 Leadenhall Street
London EC3A 3BP

*For and on behalf of the insurer for*
*HUNTLEIGH USA CORPORATION*


UNITED STATES AVIATION
UNDERWRITERS, INC.

By: _____
    Joseph P. Taccetta, Esq.
    Senior Vice President
As the Managers of, and on behalf of, the
United States Aircraft Insurance Group
and its Member Companies along with
the other aviation insurers subscribing to
the Aviation Insurance Policies issued to
United Air Lines, Inc. and UAL Corp.
199 Water Street, One Seaport Plaza
New York, New York  10038

6

SUSMAN GODFREY, LLP

By: _____
    H. Lee Godfrey, Esq. (HG 1204)
1000 Louisiana Street
Houston, Texas 77002-5096
Telephone: (713) 653-7857

*Attorneys for Defendant*
*HUNTLEIGH USA CORPORATION*

ACE GLOBAL MARKETS

By: _____
    John L. Larkins
    Aviation Claims Manager
ACE Global Markets
100 Leadenhall Street
London EC3A 3BP

*For and on behalf of the insurer for*
*HUNTLEIGH USA CORPORATION*

UNITED STATES AVIATION
UNDERWRITERS, INC.

By: _____
    Joseph P. Taccetta, Esq.
    Senior Vice President
As the Managers of, and on behalf of, the
United States Aircraft Insurance Group
and its Member Companies along with
the other aviation insurers subscribing to
the Aviation Insurance Policies issued to
United Air Lines, Inc. and UAL Corp.
199 Water Street, One Seaport Plaza
New York, New York 10038

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.: 21 MC 97 (AKH)

THIS DOCUMENT RELATES TO:
03 CV 7083

IN RE SEPTEMBER 11 LITIGATION

Nassaney, et al. v. United Airlines,
Inc., et. al.

## CONFIDENTIAL RELEASE

A.    PATRICK JOHN NASSANEY, SR. and MARGARET M. NASSANEY as Co-Representatives and on behalf of Two SIBLINGS of the Estate of SHAWN M. NASSANEY, deceased, as RELEASORS, and in consideration of the sum of ███████ ██████████████████████████████████████████████████████ ████████████████████████████ to be paid by the Insurers of UNITED AIR LINES, INC. (hereinafter, "UNITED") and UAL CORPORATION (hereinafter, "UAL), and ████████████████████████████████████████████████████████ ██████████████the sum of ████████████████████████████████ to be paid by the Insurers of HUNTLEIGH USA CORPORATION (hereinafter, "HUNTLEIGH"), for a total of the payments to RELEASORS of ██████████ ███████████ [AMOUNT] of which is to be used to purchase a structured settlement annuity as set out in paragraph B.2.), hereby releases and discharges UNITED, UAL, HUNTLEIGH, ICTS INTERNATIONAL NV  and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each of the defendants listed in Appendix "A" hereto

EXHIBIT 1

("RELEASEES"), and all RELEASEES' parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities, officers, directors, employees, agents, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law, admiralty or equity, which the RELEASORS, RELEASORS' heirs, executors, administrators, successors and/or assigns ever had, now have or hereafter can, shall or may, have against the RELEASEES for, upon, or by reason of any matter, cause or thing whatsoever relating to or arising out of the following: death of and personal injuries to SHAWN M. NASSANEY, whether assertable by the heirs or personal representatives of SHAWN M. NASSANEY or by any other person or entity entitled by law to recover damages as a result of the death of or personal injury to SHAWN M. NASSANEY, and whether characterized as wrongful death claims, survival or survivorship claims, personal injuries or otherwise, loss of or damage to the baggage, personal effects, or other property of SHAWN M, NASSANEY; and any and all other losses, damages and/or injuries relating to or arising out of SHAWN M. NASSANEY having been a passenger on United Flight 175 on September 11, 2001, (hereinafter, "the death of SHAWN M. NASSANEY") from the beginning of the world to the day of the date of this Confidential Release.

RELEASORS agree that all sums advanced by any RELEASEES named herein, shall be deducted from the settlement amount payable under this Confidential Release.

B.    Payments to RELEASORS:

2

EXHIBIT 1

1.    Cash at Settlement and Amounts Previously Paid: RELEASORS have received [AMOUNT], receipt of which is hereby acknowledged.

2.    Periodic Payments: In addition to the amounts stated in Paragraph B.1, the following Periodic Payments will be made resulting from the wrongful death and/or personal physical injuries relating to or arising out of the death of SHAWN M. NASSANEY:

(a) To [NAME] the following guaranteed lump sum: [AMOUNT] paid on [DATE].

(b) Should [NAME] die before [DATE], then the monthly payments set forth in Paragraph B.2(a) shall instead be paid, as they becomes due, to the estate of [NAME] with the last guaranteed payment to be made on [DATE].

(c) The individuals named in (a) through (b) above shall have the right, at any time during the term of this Confidential Release, to submit a request to change the Beneficiary by filing a written request with the owner of the annuity. This request will be reviewed by the owner of the annuity and if approved by the owner of the annuity and the issuing annuity company it will become effective. Said request will be made in writing.

(d) All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

C.    Financing of Periodic Payment Obligation:

1.    Assignment of Obligation: It is understood and agreed by and between the parties hereto that the RELEASEES may, as a matter of right and in their sole

EXHIBIT 1

discretion, assign their duties and obligations to make such future payments as set forth in Paragraphs B.2(a), (b), (c) and (d) to [ASSIGNEE] pursuant to a "Qualified Assignment and Release Agreement," within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, in the form attached hereto as Appendix "B". The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of RELEASEES (whether by judgment or agreement) immediately preceding the assignment of Periodic Payments obligation. Such assignment is hereby accepted by the RELEASORS without right of rejection and in full discharge and release of the duties and Periodic Payment obligations of the RELEASEES with respect to such future payments. The RELEASORS recognize that, in the event of such an assignment, the [ASSIGNEE] shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the RELEASEES shall thereupon become final, irrevocable and absolute. If the RELEASEES assign the duties and obligations as provided herein, it is understood and agreed by and between the parties that [ASSIGNEE], as the assignee, shall make said future payments directly to the respective payees designated in Paragraphs B.2(a), (b), (c), and (d).

THE PARTIES HERETO EXPRESSLY UNDERSTAND AND AGREE THAT WHEN AN ASSIGNMENT OF THE DUTIES AND OBLIGATIONS TO MAKE SAID FUTURE PAYMENTS IS MADE BY THE RELEASEES TO [ASSIGNEE] PURSUANT TO THIS CONFIDENTIAL RELEASE, ALL OF THE DUTIES AND RESPONSIBILITIES OTHERWISE IMPOSED UPON THE RELEASEES BY THIS CONFIDENTIAL RELEASE WITH RESPECT TO SUCH FUTURE PAYMENTS SHALL CEASE, AND

4

EXHIBIT 1

INSTEAD BE BINDING SOLELY UPON [ASSIGNEE]. IT IS FURTHER UNDERSTOOD AND AGREED THAT WHEN AN ASSIGNMENT IS MADE, THE RELEASEES SHALL BE RELEASED FROM ALL OBLIGATIONS TO MAKE SUCH FUTURE PAYMENTS AND [ASSIGNEE] SHALL AT ALL TIMES REMAIN DIRECTLY AND SOLELY RESPONSIBLE FOR, AND SHALL RECEIVE CREDIT FOR, THE FUTURE PAYMENTS. IT IS FURTHER UNDERSTOOD AND AGREED THAT WHEN AN ASSIGNMENT IS MADE, [ASSIGNEE] ASSUMES THE DUTIES AND RESPONSIBILITIES OF THE RELEASEES WITH RESPECT TO SUCH FUTURE PAYMENTS.

2.    Third Party Payment: It is further understood and agreed by the parties that all future payments as set forth in Paragraphs B.2(a), (b), (c), and (d) may, solely at the option of the RELEASEES, or their assignee, [ASSIGNEE], be financed by the purchase of an Annuity Contract from [COMPANY] (the "Annuity Contract"). When such an Annuity Contract is purchased, the assignee, [ASSIGNEE], shall be the owner of the Annuity Contract and shall have and retain all rights of ownership in the Annuity Contract. For its own convenience, the assignee shall direct [COMPANY] to make all the periodic payments directly to the respective payees designated in Paragraphs B.2(a), (b), (c), and (d). Such payments will be applied against the obligation of the RELEASEES or their assignee and shall operate as a *pro tanto* discharge of the scheduled obligations set forth in this Release. The respective payees designated in Paragraph B.2. shall be responsible for maintaining a current mailing address with [COMPANY].

5

EXHIBIT 1

3.    Status of RELEASORS: The RELEASORS shall, at all times, remain a secured creditor of the RELEASEES, Assignee(s) or their assignee and shall have no rights in the Annuity Contract nor in any other assets of the RELEASEES or their assignee.  The RELEASEES or their assignee shall not be required to set aside sufficient assets or secure their obligation to the RELEASORS in any manner whatsoever.  The RELEASORS acknowledge that the RELEASORS have no right to receive the present value of the payments due the RELEASORS pursuant to Paragraphs B.2(a), (b), (c), and (d) or to control the investment of, or accelerate, defer, increase or decrease the amount of any payment required to be made to the RELEASORS.  The RELEASORS shall only be entitled to receive the payments specified in Paragraphs B.2(a), (b), (c), and (d), as they are due.

4.    Dates of Birth: [NAME] hereby warrants and represents that he/she was born on [DATE OF BIRTH].  [NAME] hereby warrants and represents that he/she was born on [DATE OF BIRTH].  Notwithstanding anything to the contrary herein, if the actual dates of birth are not as stated above, and if the RELEASEES or their assigned rely or have relied to their detriment on the accuracy of the above-stated dates of birth, the RELEASEES or their assignee may adjust the amount and/or timing of the remaining Periodic Payments so that no additional cost than that necessary to purchase the Annuity Contract is incurred by the RELEASEES or their assignee.

D.    No Changes in Future Payments: Neither the RELEASORS, [his/her/their estate], nor any subsequent beneficiary or recipient of any payments or any part of any payments under this Confidential Release, shall have the right to accelerate, defer, increase or decrease any of the Periodic Payments; or sell, assign, pledge,

EXHIBIT 1

hypothecate, or otherwise transfer or encumber, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitations any applicable structured settlement protection statute.

E.    Discharge of Obligation:  The obligation of the RELEASEES or the Assignee(s) to make each Periodic Payment to the payees designated to receive such payment shall automatically be discharged upon the mailing of a valid check in the amount of such payment to the address of such payee most recently designated pursuant to Paragraph B.2. of this Confidential Release or upon completion of an electronic funds transfer in the amount of such payment to the deposit account of such payee most recently designated pursuant to paragraph B.2. of this Confidential Release.

F.    The sums described in Paragraphs A and B above represent all of the consideration that the RELEASEES will ever be required to pay the RELEASORS or any other person or entity for the claims described above.

FOR AND IN FURTHER CONSIDERATION of the payments described above, the RELEASORS agree as follows:

1.    The RELEASORS agree to protect, indemnify, and hold harmless RELEASEES from and against all actions, causes of action, remedies, suits, debts, covenants, contracts, controversies, agreements, promises, damages (including, but not limited to, pecuniary, non-pecuniary, moral, patrimonial, compensatory and punitive

7

EXHIBIT 1

damages), liabilities, judgments, executions, claims, demands of whatsoever nature, known and unknown (including, but not limited to, liens or liabilities of whatsoever nature, including without limitation, those relating to or arising out of any worker's compensation payments and those that may arise by reason of the legal or tax consequences of this Confidential Release), and all costs and expenses (including, but not limited to, reasonable attorneys' fees) in defending any such actions, etc., brought against RELEASEES by anyone claiming by, through, or under RELEASORS, relating to or arising out of the death of SHAWN M. NASSANEY whether anticipated or unanticipated, however caused and whether by sole, joint, or concurrent negligence, strict liability, treaty liability, Intercarrier Agreement liability, contractual liability, or otherwise of RELEASEES.

2.    RELEASORS recognize, acknowledge, and accept that there is a risk that, after the execution of this Confidential Release, (a) RELEASORS will claim or suffer personal bodily discomfort, emotional distress, or economic loss that are in some way caused by or related to the death of SHAWN M. NASSANEY, but which are unknown and unanticipated at the time this Confidential Release is executed; (b) the damages presently known may be or may become more extensive than RELEASORS now expect or anticipate; and (c) the laws governing what damages are available to them may change. RELEASORS accept these risks, and this Confidential Release shall apply to all unknown and unanticipated results of the death of SHAWN M. NASSANEY as well as those known and anticipated. The provisions of any local, state, federal, or foreign law, statute, or judicial decision providing in substance that releases shall not extend to unknown or unanticipated claims, damages, or injuries are hereby expressly waived.

8

EXHIBIT 1

3.    The payments described above and the execution of this Confidential Release are the result of a compromise of disputed claims and shall not at any time for any purpose be considered as an admission of liability, responsibility, or proportionate responsibility of RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with the death of SHAWN M. NASSANEY.    RELEASORS acknowledge that RELEASEES expressly continue to deny and disclaim such liability and responsibility and intend merely to avoid further litigation and buy their peace. This Confidential Release is a final and full settlement of all claims against RELEASEES and shall not be subject to any claim of mistake of fact or law by RELEASORS.

4.    The amount of the payments of the settlement shall remain confidential. The parties shall not disclose the amount of the payments of the settlement agreement, except to the parties, their attorneys, employees, agents, insurers and insurance representatives who have a need to know the amount of the settlement, and to any court of competent jurisdiction. No party, attorney, employee, agent, insurer or insurance representative of a party shall disclose the amount of the settlement payments unless required to do so by court order.

5.    RELEASORS represent and warrant that they are not relying on the advice of the RELEASEES, or anyone associated with them, as to legal, tax (income, estate, gift, or otherwise), or other consequences of any kind arising out of this Confidential Release; that they have not relied on any representations or statements, written or oral, of RELEASEES, including but not limited to, any factual representation regarding the death of SHAWN M. NASSANEY except those set forth in this Confidential Release; and that they are knowingly and voluntarily signing this

9

EXHIBIT 1

Confidential Release and is not subject to duress, coercion, or undue influence by the RELEASEES or anyone else.

6.    RELEASORS represent and warrant that they have not filed, will not file, or cause to be filed, any other actions, causes of action, suits, claims, or demands, of any nature whatsoever, arising from or relating to the death of SHAWN M. NASSANEY in any court or tribunal, or with any adjudicatory, legislative, executive or other governmental or private body or agency anywhere in the U.S. or abroad against RELEASEES.  This Confidential Release does not preclude the RELEASORS from continuing any direct action filed against terrorists and/or sponsors of terrorism arising from or relating to the death of SHAWN M. NASSANEY, as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-1616 (USDC, District of Columbia (JR)); *In Re Terrorist Attacks of September 11, 2001*, 03 MDL 1570 (RCC) and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 03 CV 9849 (RCC).

7.    RELEASORS understand that they have the right to obtain legal counsel to review and evaluate this Confidential Release, and RELEASORS attest that they have done so or agreed to waive this right.  RELEASORS further understand and agree that they shall be responsible for the payment of all expenses arising from and in connection with any matters related to the death of SHAWN M. NASSANEY, other than any expenses previously paid for by the RELEASEES, and that RELEASORS shall be responsible for the payment of any attorneys' fees and legal expenses that they have incurred or may incur.  RELEASORS further agree that statutes providing for the

10

EXHIBIT 1

payment of interest, costs, or expenses with respect to settlement proceeds in this action are inapplicable.

8.     RELEASORS represent and warrant that they will satisfy all outstanding worker's compensation liens, medical liens, attorneys' fees liens, and all other liens, if any, from the proceeds of this settlement.

9.     This Confidential Release and the performance hereunder, shall be governed by and construed under the laws of the State of New York, without giving effect to its conflicts of law provisions that would result in the application of the law of any other jurisdiction.

10.    This Confidential Release may not be modified orally and can only be modified by means of a written agreement signed by the RELEASORS, UNITED, UAL, HUNTLEIGH and ICTS INTERNATIONAL NV.

11

EXHIBIT 1

11.    This Confidential Release can be executed in multiple originals.

In witness whereof, the RELEASOR, PATRICK JOHN NASSANEY, SR., has

hereunto set RELEASOR'S hand and seal on the _____ day of _____, 2007

_____
PATRICK JOHN NASSANEY, SR., RELEASOR

STATE OF                        )
                               ) ss.:
COUNTY OF                       )

On _____, 2007, before me personally came PATRICK JOHN NASSANEY, SR., to me known, and known to me to be the individual described herein, and who executed the foregoing CONFIDENTIAL RELEASE, and duly acknowledged to me that he executed the same.

_____
NOTARY PUBLIC

In witness whereof, the RELEASOR, MARGARET M. NASSANEY, has hereunto

set RELEASOR'S hand and seal on the _____ day of _____, 2007

_____
MARGARET M. NASSANEY, RELEASOR

STATE OF                        )
                               ) ss.:
COUNTY OF                       )

On _____, 2007, before me personally came MARGARET M. NASSANEY, to me known, and known to me to be the individual described herein, and who executed the foregoing CONFIDENTIAL RELEASE, and duly acknowledged to me that she executed the same.

_____
NOTARY PUBLIC

12

EXHIBIT 1

**APPENDIX A**

AEROFLOT

AIR CANADA

AIR FRANCE

AIR JAMAICA

AIR TRANSPORT ASSOCIATION OF AMERICA, INC.

AIRTRAN AIRLINES

ALASKA AIRLINES, INC.

AMERICA WEST AIRLINES, INC.

AMERICAN AIRLINES, INC.

AMERICAN EAGLE AIRLINES

AMERICAN TRANS AIR, INC.

AMR CORPORATION

ANA

ARGENBRIGHT SECURITY, INC.

ATA AIRLINES, INC.

ATLANTIC COAST AIRLINES, INC.

AUSTRIAN AIRLINES

BARKSHIRE, INC.

BRITISH AIRWAYS

BRITISH MIDLAND AIRWAYS, LTD

BURNS INTERNATIONAL SECURITY SERVICES CORP.

BURNS INTERNATIONAL SERVICES CORP.

EXHIBIT 1

BWIA INTERNATIONAL AIRWAYS

CAPE AIR

CITY OF PORTLAND, MAINE

COLGAN AIR, INC.

CONTINENTAL AIRLINES, INC.

DELTA AIR LINES INC.

DELTA EXPRESS

EMERY ROTH AND PARTNERS LLC d/b/a EMERY ROTH & SONS

ETHIOPIAN AIRLINES S.C.

FRONTIER AIRLINES, INC.

HUNTLEIGH  AVIATION SERVICES CORPORATION

HEIMANN SYSTEMS CORP.

HUNTLEIGH USA CORP.

ICTS INTERNATIONAL NV

INVISION TECHNOLOGIES, INC.

JETBLUE

KLM

KOREAN AIRLINES

L-3 COMMUNICATIONS CORPORATION

L-3 COMMUNICATIONS CORPORATION SECURITY AND DETECTION SYSTEMS

L-3 COMMUNICATIONS HOLDINGS, INC.

LESLIE E. ROBERTSON ASSOCIATES

LUFTHANSA

14

EXHIBIT 1

MAGNUSSON KLEMENCIC ASSOCIATES

MASSACHUSETTS PORT AUTHORITY

METROPOLITAN WASHINGTON AIRPORT AUTHORITY

MIDWEST EXPRESS AIRLINES

MINORU YAMASAKI ASSOCIATES

NATIONAL AIRLINES

NORTHWEST AIRLINES

PAN AMERICAN AIRWAYS

PINKERTON'S, INC.

PORT AUTHORITY OF NEW YORK & NEW JERSEY

QANTAS AIRWAYS LIMITED

QUANTUM MAGNETICS, INC.

SAUDI ARABIAN AIRLINES

SCANDINAVIAN AIRLINES SYSTEM, SAS

SECURICOR PLC

SECURITAS AB

SILVERSTEIN PROPERTIES, INC.

SKILLING WARD MAGNUSSON

SWISSAIR

SWISSAIR TRANSPORT COMPANY

TACA INTERNATIONAL AIRLINES

TEM ENTERPRISES d/b/a CASINO EXPRESS

THE BOEING COMPANY

15

EXHIBIT 1

TISHMAN REALTY & CONSTRUCTION CO., INC.

UAL CORPORATION

UNITED AIR LINES, INC.

US AIRWAYS, INC.

VIRGIN ATLANTIC AIRWAYS, LTD

WORLD TRADE CENTER PROPERTIES LLC

16

EXHIBIT 1

APPENDIX B

# Qualified Assignment, Release and Pledge Agreement
## *In Accordance With Internal Revenue Code Section 130*

**"Claimant(s)-Secured Party":**

_____

**"Assignor":**    _____

**"Settlement Agreement":**  _____
[Date and title of settlement agreement, order or other document embodying the Assignor's obligation to make the agreed periodic payments]

**"Assignee-Debtor":**

_____

**"Annuity Issuer":**  _____

**"Effective Date":**  _____

**This Qualified Assignment, Release and Pledge Agreement** is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A. Claimant(s)-Secured Party and Assignor are parties to or are otherwise subject to or entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s)-Secured Party as specified or referred to in paragraph 15 of this Agreement (the "Periodic Payments");

B. Assignor and Assignee-Debtor wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code"); and

C. Assignee-Debtor desires to grant to Claimant-Secured Party a security interest to secure the liability being assumed by Assignee-Debtor to make the Periodic Payments.

**Now, therefore,** in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor**. Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

17

EXHIBIT 1

2. **Nature of Periodic Payments.** The Periodic Payments constitute

   i.   damages (other than punitive damages), whether by suit or agreement, or

   ii.  compensation under a workers' compensation act,

   on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee-Debtor's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee-Debtor will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee-Debtor shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee-Debtor; provided, however, that the Annuity shall be used by Assignee-Debtor to fund the Periodic Payments and shall at all times be designated by Assignee-Debtor on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement. Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant-Secured Party nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments.** Assignee-Debtor may have Annuity Issuer send payments directly to a Claimant-Secured Party, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to a depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant-Secured Party or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant-Secured party or any Successor Payee any rights of ownership or control of the Annuity. Each Claimant-Secured Party and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant-Secured Party's or Successor Payee's current street address and telephone number and, if such Claimant-Secured Party or Successor Payee receives payments by electronic funds transfer, the name, address, bank identifier number (BIN) and telephone number of the applicable depository institution and the account number of the account to which the payments are to be credited.

6. **Discharge of Liability.** The Assignee-Debtor's liability to make each Periodic Payment to the Claimant-Secured Party or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant-Secured Party or Successor Payee by the Annuity Issuer.

7. **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

   i.   Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

   ii.  Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance

18

EXHIBIT 1

(any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Claimant-Secured Party or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above, the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries.** Any Periodic Payments to be made after the death of any Claimant-Secured Party or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant-Secured Party or Successor Payee, payment shall be made to the decedent's estate. As used in this agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant-Secured Party or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent). Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. Assignee-Debtor hereby pledges and grants to Claimant-Secured Party a lien on and security interest in all of Assignee-Debtor's right, title, and interest in the Annuity and all payments therefrom in order to secure the obligation of Assignee-Debtor to make the Periodic Payments. Assignee-Debtor and Claimant-Secured Party shall notify Annuity Issuer of the lien created under this Agreement and Assignee-Debtor shall deliver the Annuity to Claimant-Secured Party upon execution of this agreement and receipt by Assignee-Debtor of the Annuity from Annuity Issuer. Assignee-Debtor shall have no obligation to perform any other acts in connection with the pledge and grant of said security interest other than as expressly provided in this paragraph 9 of this Agreement.

10. Assignee-Debtor shall have all rights of Ownership and control in the Annuity; including the right to receive and retain all benefits under the Annuity, which are not inconsistent with the security interested granted under paragraph 11, and Claimant-Secured Party shall have no right to anticipate, sell, assign, pledge, encumber, or otherwise exercise any right with respect to the Annuity, so long as Assignee-Debtor has not failed due to insolvency or bankruptcy to make any of the Periodic Payments. If such a failure occurs and is continuing, Claimant-Secured Party shall have all of the rights and remedies of a secured party under the law then in effect in the State of New York.

11. The Annuity will bear the following legend:

"NOTICE"

"This annuity contract has been delivered to the possession of _____ for the sole purpose of perfecting a lien and security interest of such person in this contract. _____ is

19

EXHIBIT 1

not the owner of, and has no ownership rights in, this contract and may not anticipate, sell, assign, pledge, encumber, or otherwise use this contract as any form of collateral. Please contact the issuer of this contract for further information."

12. **Failure to Satisfy Section 130(c)**. If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee-Debtor of the liability to make the Periodic Payments, Assignee's acceptance of such assignment and the release by Claimant -Secured Party(s) of Assignor's liability shall be of no force or effect; (ii) Assignee -Debtor shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee-Debtor shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

13. **Governing Law; Disclosure of Certain Tax Information; Binding Effect**.

   (i)   This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

   (ii)  This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

14. **Advice, Comprehension of Agreement**. In entering into this Agreement, each Claimant-Secured Party represents and warrants that (i) such Claimant-Secured Party has relied solely upon the legal and tax advice of such Claimant-Secured Party's own attorneys and other advisors, who are the attorneys and advisors of such Claimant-Secured Party's choice, concerning the legal and income tax consequences of this Agreement; and (ii) the terms of this Agreement have been completely read by and explained to such Claimant-Secured Party and are fully understood and voluntarily accepted by such Claimant-Secured Party.

15. **Description of Periodic Payments**. The Periodic Payments are as set forth immediately below or (if not set forth below) as set forth in attached **Addendum No. 1**, which is hereby incorporated in and made a part of this Agreement.

20

EXHIBIT 1

**Description of Periodic Payments:**

_____

_____

_____

_____

_____

**This Qualified Assignment and Release Agreement** is signed in one or more counterparts as of the Effective Date by the following:

Assignor: _____     Assignee: _____

By: _____          By: _____
     Authorized Representative                   Authorized Representative

Title: _____        Title: _____


**Claimant(s)-Secured Party:**                     *Approved as to Form and Content:*

   _____              _____
   Claimant-Secured Party Signature           Attorney for Claimant-Secured Party

   _____              _____
   Claimant-Secured Party Signature           Attorney for Claimant-Secured Party


EXHIBIT 1

# Addendum No. 1
## Description of Periodic Payments

Initials

Assignor: _____

Assignee: _____

Claimant(s)
Secured Party: _____

_____

Attorney for
Claimant-
Secured Party: _____

_____

22

**Exhibit A**

**EXHIBIT "B"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.: 21 MC 97 (AKH)
           21 MC 101 (AKH)

IN RE SEPTEMBER 11 LITIGATION

THIS DOCUMENT RELATES TO:
03 CV 7084 (AKH)

Sanchez v. United Airlines, Inc., et. al.

## CONFIDENTIAL STIPULATION OF SETTLEMENT

By and through their attorneys, Defendants UNITED AIR LINES, INC. (hereinafter "UNITED"), UAL CORPORATION (hereinafter "UAL"), and HUNTLEIGH USA CORPORATION (hereinafter "HUNTLEIGH"), and plaintiff, FELICITA MARIA SANCHEZ, in her own right, on Behalf of a Minor Child and Behalf of JESUS SANCHEZ, SR., and as Executrix and/or Administratrix of the Estate of JESUS SANCHEZ, JR., deceased (hereinafter "PLAINTIFF") hereby stipulate and agree:

1. In consideration of the sum of ███████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████ to be paid by the Insurers of UNITED and UAL, and █████████ ███████████████████████████████████████████ ██████████ the sum of ████████████████████████ █████████████████████████████████ to be paid by the Insurers of HUNTLEIGH, for a total of the payments to PLAINTIFF of █████████ ███████████████████████████████████████████

PLAINTIFF hereby agrees to release and discharge UNITED, UAL, HUNTLEIGH, ICTS INTERNATIONAL NV and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), and agrees to execute a Confidential Release in the form attached hereto as Exhibit "1".

2.      A portion of said total payments will provide Cash at Settlement and the balance of said payments will finance the purchase of an Annuity Contract which would provide the PLAINTIFF, and/or the designated beneficiary of such Annuity Contract, Future Periodic Payments.  The amount of Cash at Settlement and the amount of said payments that are to fund said Annuity Contract, together with the terms applicable to same, will be set forth and specified in the Confidential Release, in the form attached hereto as Exhibit "1."

3.      The parties to this Agreement recognize the legitimate interest of UNITED, UAL, and HUNTLEIGH in ensuring that the full amounts paid pursuant to this Agreement count against the limits on their respective liability established by Section 408(a)(1) of the Air Transportation Safety and System Stabilization Act ("ATSSSA"). UNITED, UAL, and HUNTLEIGH are not willing to enter into this Agreement absent that assurance.  The parties therefore agree that:

(a)     UNITED, UAL, and HUNTLEIGH shall have no obligations hereunder, unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts paid hereunder count against the limits of liability established by Section 408(a)(1)of ATSSSA; and

(b)     No settlement payments shall be made pursuant to this

2

Agreement unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts to be paid hereunder count against the limits of liability established by Section 408(a)(1)of ATSSSA.

4.    Within 21 days after execution of this Confidential Stipulation of Settlement, UNITED, UAL, and HUNTLEIGH shall seek from the United States District Court for the Southern District of New York or an appropriate federal appellate court the non-appealable determination described in paragraph "3". The parties agree, and PLAINTIFF specifically consents, that the motion for the non-appealable final determination will include a request that the Court dismiss with prejudice all proceedings by PLAINTIFF against all UNITED, UAL, and HUNTLEIGH, and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each of the defendants listed in Appendix "A" to the Confidential Release in the form attached hereto as Exhibit "1" ("RELEASEES"), and all RELEASEES' parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities, officers, directors, employees, agents, heirs, executors, administrators, successors and assigns.

5.    Following execution of the Confidential Stipulation of Settlement, PLAINTIFF shall submit to Judge Alvin K. Hellerstein a Motion for Compromise Order approving the settlement and the distribution of the settlement proceeds and authorizing PLAINTIFF to execute and deliver a Confidential Release in the form attached hereto as Exhibit "1."

3

6.    PLAINTIFF shall deliver to UNITED, UAL, and HUNTLEIGH's attorneys an executed Confidential Release in the form attached hereto as Exhibit "1". The execution of said Confidential Release does not preclude the PLAINTIFF from continuing any direct action filed against terrorists and/or sponsors of terrorism arising from or relating to the death of JESUS SANCHEZ, JR., as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-1616 (USDC, District of Columbia (JR)); *In Re Terrorist Attacks of September 11, 2001,* 03 MDL 1570 (RCC); and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 03 CV 9849 (RCC).

7.    Subject to compliance with all conditions set forth above, within 30 days after the non-appealable determination described in paragraphs "3" and "4" is issued or within 30 days after receipt by counsel for UNITED, UAL, and HUNTLEIGH of the executed Confidential Release, whichever is later, UNITED, UAL, and HUNTLEIGH's insurers will pay to PLAINTIFF the settlement funds as indicated in the Confidential Release. In the event that a court of competent jurisdiction declines to enter the final non-appealable determination referenced in paragraphs "3" and "4", this Confidential Stipulation of Settlement shall be void, and PLAINTIFF shall be entitled to reinstate her case against the RELEASEES.

8.    The parties acknowledge that this agreement is entered into solely for the purpose of amicably resolving the parties' dispute and the parties specifically acknowledge and agree that this agreement does not constitute an admission of liability, responsibility, or proportionate responsibility by any party.

9.    This agreement and the performance thereunder shall be governed by

4

and construed under the laws of the State of New York, without giving effect to its conflict of law provisions that would result in the application of the law of any other jurisdiction.

10.    This Agreement may not be modified orally and can only be modified by means of a written agreement signed by the PLAINTIFF, UNITED, UAL, HUNTLEIGH and ICTS INTERNATIONAL NV.

11.    The amount of the payments under this settlement shall remain confidential. Dissemination of the amount of payments under this settlement shall be restricted to only the parties, their attorneys, employees, agents, insurers, and insurance representatives who have a need to know the amount of the settlement, and to any court referenced in paragraphs "3" and "4". No party, attorney, employee, agent, insurer, or insurance representative of a party shall disclose the amount of the settlement unless required to do so by court order.

12.    This agreement may be executed in counterparts.

Dated: New York, New York
          Dec. 19          , 2007

MOTLEY RICE LLC

By: _Elizabeth Smith_

Donald Migliori, Esq. (          )
Elizabeth Smith, Esq. (          )
28 Bridgeside Boulevard
Mt. Pleasant, South Carolina 29465
Telephone: (843) 216-9000

*Attorneys for Plaintiff Felicita Maria Sanchez*

QUIRK AND BAKALOR, P.C.

By: _Jeffrey J. Ellis_

Jeffrey J. Ellis, Esq. (JJE 7796)
845 Third Avenue, 15th Floor
New York, New York 10022
Telephone: (212) 319-1000

-and-

Michael R. Feagley, Esq.
MAYER BROWN, LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7065

5

*Attorneys for Defendants*
*UNITED AIR LINES, INC. and*
*UAL CORPORATION*

SUSMAN GODFREY, LLP

UNITED STATES AVIATION
UNDERWRITERS, INC.

By: _____

     H. Lee Godfrey, Esq. (HG 1204)
1000 Louisiana Street
Houston, Texas 77002-5096
Telephone: (713) 653-7857

By: _____

     Joseph P. Taccetta, Esq.
     Senior Vice President
As the Managers of, and on behalf of, the
United States Aircraft Insurance Group
and its Member Companies along with
the other aviation insurers subscribing to
the Aviation Insurance Policies issued to
United Air Lines, Inc. and UAL Corp.
199 Water Street, One Seaport Plaza
New York, New York 10038

*Attorneys for Defendant*
*HUNTLEIGH USA CORPORATION*

ACE GLOBAL MARKETS

By: _____

     John L. Larkins
     Aviation Claims Manager
ACE Global Markets
100 Leadenhall Street
London EC3A 3BP

*For and on behalf of the insurer for*
*HUNTLEIGH USA CORPORATION*

SUSMAN GODFREY, LLP

By: _____
     H. Lee Godfrey, Esq. (HG 1204)
1000 Louisiana Street
Houston, Texas  77002-5096
Telephone: (713) 653-7857

*Attorneys for Defendant*
*HUNTLEIGH USA CORPORATION*


ACE GLOBAL MARKETS


By: _____
     John L. Larkins
     Aviation Claims Manager
ACE Global Markets
100 Leadenhall Street
London EC3A 3BP

*For and on behalf of the insurer for*
*HUNTLEIGH USA CORPORATION*

*Attorneys for Defendants*
*UNITED AIR LINES, INC. and*
*UAL CORPORATION*

UNITED STATES AVIATION
UNDERWRITERS, INC.

By: _____
     Joseph P. Faccetta, Esq.
     Senior Vice President
As the Managers of, and on behalf of, the
United States Aircraft Insurance Group
and its Member Companies along with
the other aviation insurers subscribing to
the Aviation Insurance Policies issued to
United Air Lines, Inc. and UAL Corp.
199 Water Street, One Seaport Plaza
New York, New York  10038

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No.: 21 MC 97 (AKH)

21 MC 101 (AKH)

IN RE SEPTEMBER 11 LITIGATION

THIS DOCUMENT RELATES TO:
03 CV 7084

Sanchez v. United Air Lines, Inc., et. al.

## CONFIDENTIAL RELEASE

A.    FELICITA MARIA SANCHEZ, in her own right, on Behalf of a Minor Child and on Behalf of JESUS SANCHEZ, SR., and as Executrix and/or Administratrix of the Estate of JESUS SANCHEZ, JR., deceased, as RELEASOR, and in consideration of the sum of ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████ to be paid by the Insurers of UNITED AIR LINES, INC. (hereinafter, "UNITED") and UAL CORPORATION (hereinafter, "UAL"), and ██████████████████████████████████████████████████████ ██████████████████████ the sum of █████████████████████████ ████████████████████████████████ to be paid by the Insurers of HUNTLEIGH USA CORPORATION (hereinafter, "HUNTLEIGH"), for a total of the payments to RELEASOR of ████████████████████████████████ ████████████████████████████, [AMOUNT] of which is to be used to purchase a structured settlement annuity as set out in paragraph B.2.), hereby releases and

EXHIBIT 1

discharges UNITED, UAL, HUNTLEIGH, ICTS INTERNATIONAL NV and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each of the defendants listed in Appendix "A" hereto ("RELEASEES"), and all RELEASEES' parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities, officers, directors, employees, agents, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law, admiralty or equity, which the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and/or assigns ever had, now have or hereafter can, shall or may, have against the RELEASEES for, upon, or by reason of any matter, cause or thing whatsoever relating to or arising out of the following: death of and personal injuries to JESUS SANCHEZ, JR., whether assertable by the heirs or personal representative of JESUS SANCHEZ, JR. or by any other person or entity entitled by law to recover damages as a result of the death of or personal injury to JESUS SANCHEZ, JR., and whether characterized as wrongful death claims, survival or survivorship claims, personal injuries or otherwise, loss of or damage to the baggage, personal effects, or other property of JESUS SANCHEZ, JR.; and any and all other losses, damages and/or injuries relating to or arising out of JESUS SANCHEZ, JR. having been a passenger on board United Flight 175 on September 11, 2001, (hereinafter, "the death of JESUS SANCHEZ, JR.") from the beginning of the world to the day of the date of this Confidential Release.

2

EXHIBIT 1

RELEASOR agrees that all sums advanced by any RELEASEES named herein, shall be deducted from the settlement amount payable under this Confidential Release.

B.    Payments to RELEASOR:

1.    Cash at Settlement and Amounts Previously Paid: RELEASOR has received [AMOUNT], receipt of which is hereby acknowledged.

2.    Periodic Payments: In addition to the amounts stated in Paragraph B.1, the following Periodic Payments will be made resulting from the wrongful death and/or personal physical injuries relating to or arising out of the death of JESUS SANCHEZ, JR.:

(a) To [NAME] the following guaranteed lump sum: [AMOUNT] paid on [DATE].

(b) Should [NAME] die before [DATE], then the monthly payments set forth in Paragraph B.2(a) shall instead be paid, as they becomes due, to the estate of [NAME] with the last guaranteed payment to be made on [DATE].

(c) The individuals named in (a) through (b) above shall have the right, at any time during the term of this Confidential Release, to submit a request to change the Beneficiary by filing a written request with the owner of the annuity. This request will be reviewed by the owner of the annuity and if approved by the owner of the annuity and the issuing annuity company it will become effective. Said request will be made in writing.

(d) All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

3

EXHIBIT 1

C.      Financing of Periodic Payment Obligation:

1.      Assignment of Obligation: It is understood and agreed by and between the parties hereto that the RELEASEES may, as a matter of right and in their sole discretion, assign their duties and obligations to make such future payments as set forth in Paragraphs B.2(a), (b), (c) and (d) to [ASSIGNEE] pursuant to a "Qualified Assignment and Release Agreement," within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, in the form attached hereto as Appendix "B". The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of RELEASEES (whether by judgment or agreement) immediately preceding the assignment of Periodic Payments obligation. Such assignment is hereby accepted by the RELEASOR without right of rejection and in full discharge and release of the duties and Periodic Payment obligations of the RELEASEES with respect to such future payments. The RELEASOR recognizes that, in the event of such an assignment, the [ASSIGNEE] shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the RELEASEES shall thereupon become final, irrevocable and absolute. If the RELEASEES assign the duties and obligations as provided herein, it is understood and agreed by and between the parties that [ASSIGNEE], as the assignee, shall make said future payments directly to the respective payees designated in Paragraphs B.2(a), (b), (c), and (d).

THE PARTIES HERETO EXPRESSLY UNDERSTAND AND AGREE THAT WHEN AN ASSIGNMENT OF THE DUTIES AND OBLIGATIONS TO MAKE SAID FUTURE PAYMENTS IS MADE BY THE RELEASEES TO [ASSIGNEE] PURSUANT

4

EXHIBIT 1

TO THIS CONFIDENTIAL RELEASE, ALL OF THE DUTIES AND RESPONSIBILITIES OTHERWISE IMPOSED UPON THE RELEASEES BY THIS CONFIDENTIAL RELEASE WITH RESPECT TO SUCH FUTURE PAYMENTS SHALL CEASE, AND INSTEAD BE BINDING SOLELY UPON [ASSIGNEE].    IT IS FURTHER UNDERSTOOD AND AGREED THAT WHEN AN ASSIGNMENT IS MADE, THE RELEASEES SHALL BE RELEASED FROM ALL OBLIGATIONS TO MAKE SUCH FUTURE PAYMENTS AND [ASSIGNEE] SHALL AT ALL TIMES REMAIN DIRECTLY AND SOLELY RESPONSIBLE FOR, AND SHALL RECEIVE CREDIT FOR, THE FUTURE PAYMENTS. IT IS FURTHER UNDERSTOOD AND AGREED THAT WHEN AN ASSIGNMENT IS MADE, [ASSIGNEE] ASSUMES THE DUTIES AND RESPONSIBILITIES OF THE RELEASEES WITH RESPECT TO SUCH FUTURE PAYMENTS.

2.    Third Party Payment: It is further understood and agreed by the parties that all future payments as set forth in Paragraphs B.2(a), (b), (c), and (d) may, solely at the option of the RELEASEES, or their assignee, [ASSIGNEE], be financed by the purchase of an Annuity Contract from [COMPANY] (the "Annuity Contract").  When such an Annuity Contract is purchased, the assignee, [ASSIGNEE], shall be the owner of the Annuity Contract and shall have and retain all rights of ownership in the Annuity Contract.  For its own convenience, the assignee shall direct [COMPANY] to make all the periodic payments directly to the respective payees designated in Paragraphs B.2(a), (b), (c), and (d).  Such payments will be applied against the obligation of the RELEASEES or their assignee and shall operate as a *pro tanto* discharge of the scheduled obligations set forth in this Release.  The respective payees designated in

5

EXHIBIT 1

Paragraph B.2. shall be responsible for maintaining a current mailing address with [COMPANY].

3.  Status of RELEASOR: The RELEASOR shall, at all times, remain a secured creditor of the RELEASEES, Assignee(s) or their assignee and shall have no rights in the Annuity Contract nor in any other assets of the RELEASEES or their assignee.  The RELEASEES or their assignee shall not be required to set aside sufficient assets or secure their obligation to the RELEASOR in any manner whatsoever.  The RELEASOR acknowledges that the RELEASOR has no right to receive the present value of the payments due the RELEASOR pursuant to Paragraphs B.2(a), (b), (c), and (d) or to control the investment of, or accelerate, defer, increase or decrease the amount of any payment required to be made to the RELEASOR.  The RELEASOR shall only be entitled to receive the payments specified in Paragraphs B.2(a), (b), (c), and (d), as they are due.

4.  Dates of Birth: [NAME] hereby warrants and represents that she was born on [DATE OF BIRTH].  Notwithstanding anything to the contrary herein, if the actual dates of birth are not as stated above, and if the RELEASEES or their assigned rely or have relied to their detriment on the accuracy of the above-stated dates of birth, the RELEASEES or their assignee may adjust the amount and/or timing of the remaining Periodic Payments so that no additional cost than that necessary to purchase the Annuity Contract is incurred by the RELEASEES or their assignee.

D.  No Changes in Future Payments: Neither the RELEASOR, [his/her/their estate], nor any subsequent beneficiary or recipient of any payments or any part of any payments under this Confidential Release, shall have the right to accelerate, defer,

6

EXHIBIT 1

increase or decrease any of the Periodic Payments; or sell, assign, pledge, hypothecate, or otherwise transfer or encumber, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitations any applicable structured settlement protection statute.

E.    Discharge of Obligation:   The obligation of the RELEASEES or the Assignee(s) to make each Periodic Payment to the payees designated to receive such payment shall automatically be discharged upon the mailing of a valid check in the amount of such payment to the address of such payee most recently designated pursuant to Paragraph B.2. of this Confidential Release or upon completion of an electronic funds transfer in the amount of such payment to the deposit account of such payee most recently designated pursuant to paragraph B.2. of this Confidential Release.

F.    The sums described in Paragraphs A and B above represent all of the consideration that the RELEASEES will ever be required to pay the RELEASOR or any other person or entity for the claims described above.

FOR AND IN FURTHER CONSIDERATION of the payments described above, the RELEASOR agrees as follows:

1.    The RELEASOR agrees to protect, indemnify, and hold harmless RELEASEES from and against all actions, causes of action, remedies, suits, debts, covenants, contracts, controversies, agreements, promises, damages (including, but not

7

EXHIBIT 1

limited to, pecuniary, non-pecuniary, moral, patrimonial, compensatory and punitive damages), liabilities, judgments, executions, claims, demands of whatsoever nature, known and unknown (including, but not limited to, liens or liabilities of whatsoever nature, including without limitation, those relating to or arising out of any worker's compensation payments and those that may arise by reason of the legal or tax consequences of this Confidential Release), and all costs and expenses (including, but not limited to, reasonable attorneys' fees) in defending any such actions, etc., brought against RELEASEES by anyone claiming by, through, or under RELEASOR, relating to or arising out of the death of JESUS SANCHEZ, JR. whether anticipated or unanticipated, however caused and whether by sole, joint, or concurrent negligence, strict liability, treaty liability, Intercarrier Agreement liability, contractual liability, or otherwise of RELEASEES.

2.    RELEASOR recognizes, acknowledges, and accepts that there is a risk that, after the execution of this Confidential Release, (a) RELEASOR will claim or suffer personal bodily discomfort, emotional distress, or economic loss that are in some way caused by or related to the death of JESUS SANCHEZ, JR., but which are unknown and unanticipated at the time this Confidential Release is executed; (b) the damages presently known may be or may become more extensive than RELEASOR now expects or anticipates; and (c) the laws governing what damages are available to them may change. RELEASOR accepts these risks, and this Confidential Release shall apply to all unknown and unanticipated results of the death of JESUS SANCHEZ, JR. as well as those known and anticipated. The provisions of any local, state, federal, or foreign law,

8

EXHIBIT 1

statute, or judicial decision providing in substance that releases shall not extend to unknown or unanticipated claims, damages, or injuries are hereby expressly waived.

3.    The payments described above and the execution of this Confidential Release are the result of a compromise of disputed claims and shall not at any time for any purpose be considered as an admission of liability, responsibility, or proportionate responsibility of RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with the death of JESUS SANCHEZ, JR..    RELEASOR acknowledges that RELEASEES expressly continue to deny and disclaim such liability and responsibility and intend merely to avoid further litigation and buy their peace.  This Confidential Release is a final and full settlement of all claims against RELEASEES and shall not be subject to any claim of mistake of fact or law by RELEASOR.

4.    The amount of the payments of the settlement shall remain confidential. The parties shall not disclose the amount of the payments of the settlement agreement, except to the parties, their attorneys, employees, agents, insurers and insurance representatives who have a need to know the amount of the settlement, and to any court of competent jurisdiction.  No party, attorney, employee, agent, insurer or insurance representative of a party shall disclose the amount of the settlement payments unless required to do so by court order.

5.    RELEASOR represents and warrants that she is not relying on the advice of the RELEASEES, or anyone associated with them, as to legal, tax (income, estate, gift, or otherwise), or other consequences of any kind arising out of this Confidential Release; that she has not relied on any representations or statements, written or oral, of RELEASEES, including but not limited to, any factual representation regarding the

9

EXHIBIT 1

death of JESUS SANCHEZ, JR. except those set forth in this Confidential Release; and that she is knowingly and voluntarily signing this Confidential Release and is not subject to duress, coercion, or undue influence by the RELEASEES or anyone else.

6.      RELEASOR represents and warrants that she has not filed, will not file, or cause to be filed, any other actions, causes of action, suits, claims, or demands, of any nature whatsoever, arising from or relating to the death of JESUS SANCHEZ, JR. in any court or tribunal, or with any adjudicatory, legislative, executive or other governmental or private body or agency anywhere in the U.S. or abroad against RELEASEES.  This Confidential Release does not preclude the RELEASOR from continuing any direct action filed against terrorists and/or sponsors of terrorism arising from or relating to the death of JESUS SANCHEZ, JR., as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-1616 (USDC, District of Columbia (JR)); *In Re Terrorist Attacks of September 11, 2001,* 03 MDL 1570 (RCC) and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 03 CV 9849 (RCC).

7.      RELEASOR understands that she has the right to obtain legal counsel to review and evaluate this Confidential Release, and RELEASOR attests that she has done so or agreed to waive this right.  RELEASOR further understands and agrees that she shall be responsible for the payment of all expenses arising from and in connection with any matters related to the death of JESUS SANCHEZ, JR., other than any expenses previously paid for by the RELEASEES, and that RELEASOR shall be responsible for the payment of any attorneys' fees and legal expenses that she has incurred or may incur.  RELEASOR further agrees that statutes providing for the

EXHIBIT 1

payment of interest, costs, or expenses with respect to settlement proceeds in this action are inapplicable.

8.    RELEASOR represents and warrants that she will satisfy all outstanding worker's compensation liens, medical liens, attorneys' fees liens, and all other liens, if any, from the proceeds of this settlement.

9.    This Confidential Release and the performance hereunder, shall be governed by and construed under the laws of the State of New York, without giving effect to its conflicts of law provisions that would result in the application of the law of any other jurisdiction.

10.    This Confidential Release may not be modified orally and can only be modified by means of a written agreement signed by the RELEASOR, UNITED, UAL, HUNTLEIGH and ICTS INTERNATIONAL NV.

11

EXHIBIT 1

11.    This Confidential Release can be executed in multiple originals.

In witness whereof, the RELEASOR, FELICITA MARIA SANCHEZ, has hereunto

set RELEASOR'S hand and seal on the _____ day of _____, 2007

_____
FELICITA SANCHEZ, RELEASOR

STATE OF                          )
                                  ) ss.:
COUNTY OF                         )

On _____, 2007, before me personally came FELICITA MARIA SANCHEZ, to me known, and known to me to be the individual described herein, and who executed the foregoing CONFIDENTIAL RELEASE, and duly acknowledged to me that she executed the same.


_____
NOTARY PUBLIC

12

EXHIBIT 1

**APPENDIX A**

AEROFLOT

AIR CANADA

AIR FRANCE

AIR JAMAICA

AIR TRANSPORT ASSOCIATION OF AMERICA, INC.

AIRTRAN AIRLINES

ALASKA AIRLINES, INC.

AMERICA WEST AIRLINES, INC.

AMERICAN AIRLINES, INC.

AMERICAN EAGLE AIRLINES

AMERICAN TRANS AIR, INC.

AMR CORPORATION

ANA

ARGENBRIGHT SECURITY, INC.

ATA AIRLINES, INC.

ATLANTIC COAST AIRLINES, INC.

AUSTRIAN AIRLINES

BARKSHIRE, INC.

BRITISH AIRWAYS

BRITISH MIDLAND AIRWAYS, LTD

BURNS INTERNATIONAL SECURITY SERVICES CORP.

BURNS INTERNATIONAL SERVICES CORP.

EXHIBIT 1

BWIA INTERNATIONAL AIRWAYS

CAPE AIR

CITY OF PORTLAND, MAINE

COLGAN AIR, INC.

CONTINENTAL AIRLINES, INC.

DELTA AIR LINES INC.

DELTA EXPRESS

EMERY ROTH AND PARTNERS LLC d/b/a EMERY ROTH & SONS

ETHIOPIAN AIRLINES S.C.

FRONTIER AIRLINES, INC.

HUNTLEIGH AVIATION SERVICES CORPORATION

HEIMANN SYSTEMS CORP.

HUNTLEIGH USA CORP.

ICTS INTERNATIONAL NV

INVISION TECHNOLOGIES, INC.

JETBLUE

KLM

KOREAN AIRLINES

L-3 COMMUNICATIONS CORPORATION

L-3 COMMUNICATIONS CORPORATION SECURITY AND DETECTION SYSTEMS

L-3 COMMUNICATIONS HOLDINGS, INC.

LESLIE E. ROBERTSON ASSOCIATES

LUFTHANSA

14

EXHIBIT 1

MAGNUSSON KLEMENCIC ASSOCIATES

MASSACHUSETTS PORT AUTHORITY

METROPOLITAN WASHINGTON AIRPORT AUTHORITY

MIDWEST EXPRESS AIRLINES

MINORU YAMASAKI ASSOCIATES

NATIONAL AIRLINES

NORTHWEST AIRLINES

PAN AMERICAN AIRWAYS

PINKERTON'S, INC.

PORT AUTHORITY OF NEW YORK & NEW JERSEY

QANTAS AIRWAYS LIMITED

QUANTUM MAGNETICS, INC.

SAUDI ARABIAN AIRLINES

SCANDINAVIAN AIRLINES SYSTEM, SAS

SECURICOR PLC

SECURITAS AB

SILVERSTEIN PROPERTIES, INC.

SKILLING WARD MAGNUSSON

SWISSAIR

SWISSAIR TRANSPORT COMPANY

TACA INTERNATIONAL AIRLINES

TEM ENTERPRISES d/b/a CASINO EXPRESS

THE BOEING COMPANY

15

EXHIBIT 1

TISHMAN REALTY & CONSTRUCTION CO., INC.

UAL CORPORATION

UNITED AIR LINES, INC.

US AIRWAYS, INC.

VIRGIN ATLANTIC AIRWAYS, LTD

WORLD TRADE CENTER PROPERTIES LLC

16

EXHIBIT 1

APPENDIX B

# Qualified Assignment, Release and Pledge Agreement
### *In Accordance With Internal Revenue Code Section 130*

**"Claimant(s)-Secured Party":**
_____

**"Assignor":** _____

**"Settlement Agreement":** _____
[Date and title of settlement agreement, order or other document embodying
the Assignor's obligation to make the agreed periodic payments]

**"Assignee-Debtor":**
_____

**"Annuity Issuer":** _____

**"Effective Date":** _____

**This Qualified Assignment, Release and Pledge Agreement** is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A . Claimant(s)-Secured Party and Assignor are parties to or are otherwise subject to or entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s)-Secured Party as specified or referred to in paragraph 15 of this Agreement (the "Periodic Payments");

B. Assignor and Assignee-Debtor wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code"); and

C. Assignee-Debtor desires to grant to Claimant-Secured Party a security interest to secure the liability being assumed by Assignee-Debtor to make the Periodic Payments.

**Now, therefore,** in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor**. Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

17

EXHIBIT 1

2. **Nature of Periodic Payments.** The Periodic Payments constitute

    i.   damages (other than punitive damages), whether by suit or agreement, or

    ii.  compensation under a workers' compensation act,

on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee-Debtor's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee-Debtor will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee-Debtor shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee-Debtor; provided, however, that the Annuity shall be used by Assignee-Debtor to fund the Periodic Payments and shall at all times be designated by Assignee-Debtor on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement. Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant-Secured Party nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments.** Assignee-Debtor may have Annuity Issuer send payments directly to a Claimant-Secured Party, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to a depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant-Secured Party or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant –Secured party or any Successor Payee any rights of ownership or control of the Annuity. Each Claimant-Secured Party and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant-Secured Party's or Successor Payee's current street address and telephone number and, if such Claimant –Secured Party or Successor Payee receives payments by electronic funds transfer, the name, address, bank identifier number (BIN) and telephone number of the applicable depository institution and the account number of the account to which the payments are to be credited.

6. **Discharge of Liability.** The Assignee-Debtor's liability to make each Periodic Payment to the Claimant-Secured Party or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant –Secured Party or Successor Payee by the Annuity Issuer.

7. **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

    i.   Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii.  Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance

18

EXHIBIT 1

(any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Claimant-Secured Party or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above, the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries.** Any Periodic Payments to be made after the death of any Claimant-Secured Party or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant-Secured Party or Successor Payee, payment shall be made to the decedent's estate. As used in this agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant-Secured Party or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent). Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. Assignee-Debtor hereby pledges and grants to Claimant-Secured Party a lien on and security interest in all of Assignee-Debtor's right, title, and interest in the Annuity and all payments therefrom in order to secure the obligation of Assignee-Debtor to make the Periodic Payments. Assignee-Debtor and Claimant-Secured Party shall notify Annuity Issuer of the lien created under this Agreement and Assignee-Debtor shall deliver the Annuity to Claimant-Secured Party upon execution of this agreement and receipt by Assignee-Debtor of the Annuity from Annuity Issuer. Assignee-Debtor shall have no obligation to perform any other acts in connection with the pledge and grant of said security interest other than as expressly provided in this paragraph 9 of this Agreement.

10. Assignee-Debtor shall have all rights of Ownership and control in the Annuity; including the right to receive and retain all benefits under the Annuity, which are not inconsistent with the security interested granted under paragraph 11, and Claimant-Secured Party shall have no right to anticipate, sell, assign, pledge, encumber, or otherwise exercise any right with respect to the Annuity, so long as Assignee-Debtor has not failed due to insolvency or bankruptcy to make any of the Periodic Payments. If such a failure occurs and is continuing, Claimant-Secured Party shall have all of the rights and remedies of a secured party under the law then in effect in the State of New York.

11. The Annuity will bear the following legend:

"NOTICE"

"This annuity contract has been delivered to the possession of _____ for the sole purpose of perfecting a lien and security interest of such person in this contract. _____ is

19

EXHIBIT 1

not the owner of, and has no ownership rights in, this contract and may not anticipate, sell, assign, pledge, encumber, or otherwise use this contract as any form of collateral. Please contact the issuer of this contract for further information."

12. **Failure to Satisfy Section 130(c).** If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee-Debtor of the liability to make the Periodic Payments, Assignee's acceptance of such assignment and the release by Claimant -Secured Party(s) of Assignor's liability shall be of no force or effect; (ii) Assignee -Debtor shall be conclusively deemed to be acting as the agent of Assignor; (iii)  the Annuity shall be  owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee-Debtor shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

13. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**

    (i)  This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    (ii) This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

14. **Advice, Comprehension of Agreement.** In entering into this Agreement, each Claimant-Secured Party represents and warrants that (i) such Claimant-Secured Party has relied solely upon the legal and tax advice of such Claimant-Secured Party's own attorneys and other advisors, who are the attorneys and advisors of such Claimant-Secured Party's choice, concerning the legal and income tax consequences of this Agreement; and (ii) the terms of this Agreement have been completely read by and explained to such Claimant-Secured Party and are fully understood and voluntarily accepted by such Claimant-Secured Party.

15. **Description of Periodic Payments.** The Periodic Payments are as set forth immediately below or (if not set forth below) as set forth in attached **Addendum No. 1,** which is hereby incorporated in and made a part of this Agreement.

20

EXHIBIT 1

**Description of Periodic Payments:**

_____

_____

_____

_____

_____

**This Qualified Assignment and Release Agreement** is signed in one or more counterparts as of the Effective Date by the following:

Assignor: _____     Assignee: _____

By: _____          By: _____
       Authorized Representative                  Authorized Representative

Title: _____       Title: _____

**Claimant(s)-Secured Party:**          *Approved as to Form and Content:*

_____              _____
Claimant Secured Party Signature       Attorney for Claimant-Secured Party

_____              _____
Claimant Secured Party Signature       Attorney for Claimant-Secured Party

EXHIBIT 1

# Addendum No. 1
## Description of Periodic Payments

Initials

Assignor:          _____

Assignee:          _____

Claimant(s)
Secured Party:     _____

                   _____

Attorney for
Claimant-
Secured Party:     _____

                   _____

22

**Exhibit A**