**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: SEPTEMBER 11 LITIGATION | ) | 21 MC 97 (AKH) |

**BRIEF OF *AMICUS CURIAE* THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS IN SUPPORT OF PLAINTIFFS' MOTION TO SET ASIDE THE DEFENDANTS' DESIGNATIONS OF CONFIDENTIALITY**

Michael D. Steger (MS-2009)
*Counsel of Record*
Law Offices of Michael D. Steger, PC
1325 Sixth Ave., 27th Floor
New York, NY 10019
(212) 956-9393

Lucy A. Dalglish
Gregg P. Leslie
Corinna J. Zarek
The Reporters Committee for Freedom of the Press
1101 Wilson Blvd., Suite 1100
Arlington, VA 22209
(703) 807-2100

*Counsel for The Reporters Committee for Freedom of the Press*

December 21, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

STATEMENT OF INTEREST ..... 1

ARGUMENT ..... 4

I. There is a great public interest and legal right to proceedings and records related to the terror attacks of Sept. 11, 2001 ..... 4

A. The public was affected by the terror attacks of Sept. 11, 2001, and has an interest and a stake in related litigation ..... 4

B. There is both a public interest and great legal precedent for access to judicial records ..... 6

1. Sound public policy requires open access to court records ..... 7

2. First Amendment and common law rights of access mandate access for court records ..... 9

II. The Protective Order is properly narrowly tailored and should be enforced ..... 11

CONCLUSION ..... 13

CERTIFICATION ..... 15

## TABLE OF AUTHORITIES

CASES

*Anderson v. Cryovac*, 805 F.2d 1 (1st Cir. 1986) ....................10

*Associated Press v. United States*, 705 F.2d 1143 (9th Cir. 1983) ("*DeLorean*")....................10

*Brown & Williamson Tobacco Co. v. Fed. Trade Comm'n*, 710 F.2d 1165 (6th Cir. 1983)....................10

*Gannett Co. v. DePasquale*, 443 U.S. 368 (1979) ....................6

*Globe Newspaper Co. v. Pokaski*, 868 F.2d 497 (1st Cir. 1989) ....................10

*Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) ....................7

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)....................9

*In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984) ....................11

*In re New York Times Co.*, 828 F.2d 110, 116 (2d. Cir. 1987) ....................2, 11

*In re Oliver*, 333 U.S. 257 (1984)....................7

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)....................1, 9

*Nixon v. Warner Communiations, Inc.*, 435 U.S. 589 (1978)....................1, 8, 9

*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press Enterprise I*") ....................7

*Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653 (3d Cir. 1991) ....................10

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)....................2, 7, 8, 10

*Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988) ....................10

*United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1995) ("*Amodeo I*")....................7, 9

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ("*Amodeo II*") ....................1, 9

*United States v. Cojab*, 996 F.2d 1404 (2d Cir. 1993)....................10

*United States v. McVeigh*, 119 F.3d 806 (10th Cir. 1997)....................11

*United States v. Myers*, 635 F.2d 945 (2d Cir. 1980) ....................10
(“*In re Nat’l Broadcasting Co.*”)

*Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16 (2d Cir. 1984) ....................6

*Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985) ....................10

OTHER AUTHORITIES

ABC News/WASHINGTON POST poll; conducted Sept. 11, 2001 ....................5

CBS News poll; conducted Sept. 11, 2001 ....................5

Geoffrey Radcliffe and Geoffrey Cross, THE ENGLISH LEGAL SYSTEM, 107-108 (5th Ed. 1971) ....................6

*Poll: Many Americans Feel Less Safe*, CBS News ....................5

USA TODAY/Gallup Poll ....................5

U.S. CONST., amend. I ....................1

**STATEMENT OF INTEREST**

The Reporters Committee for Freedom of the Press ("the Reporters Committee") is a voluntary, unincorporated association of reporters and editors that works to defend the First Amendment rights and freedom of information interests of the news media. The Reporters Committee has provided representation, guidance and research in First Amendment and freedom of information litigation in state and federal courts since 1970. The Reporters Committee files this Brief along with its Motion for Leave to File Brief of *Amicus Curiae* and respectfully requests that this Court grant its Motion.

The interest of *Amicus* in this case is in ensuring the right of the public as well as the media to access judicial records — a practice firmly rooted in our nation's history and set forth under the common law, the First Amendment, U.S. CONST., amend. I, and applied by the U.S. Supreme Court and this Circuit.[1] More than that, *Amicus* points out the immense public interest in this high-profile case involving information related to the most significant terrorist attack in United States history. We hope to bring to light the need for judicial openness and public oversight in a critically important case such as this where virtually all the public is watching.

This Court issued a Protective Order March 30, 2004 that sought to seal public access to certain information that could be harmful to parties if released to the public. Trade secrets, confidential technical information, and financial records, among other records, were deemed appropriate to keep confidential. We do not take issue with this Court's view that some of that information may properly be sealed. We do, however, take great issue with the Defendants'

---

[1] *See*, *e.g.*, *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (recognizing a common law right of access to judicial records and documents); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) (holding that a presumption of "immediate access" applies to judicial documents under both the common law and the First Amendment); *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*") (stating that public access to judicial documents is necessary to protect democratic control of courts).

application of the Protective Order, not as the narrowly tailored document the Court approved, but instead reading it as license to mark as confidential nearly every document they produced, according to the Plaintiffs' Memorandum of Law in Support of Their Motion to Set Aside the Defendants' Designations at p. 4. That was presumably not this Court's intent in properly and narrowly crafting a Protective Order covering clearly delineated categories of information. Defendants appear to have blatantly disregarded the parameters of the Order in their assertion that more than 99 percent of their documents filed fell into those narrow categories.

Although court records are presumed to be open for public review, a court may make specific findings that certain records should properly be kept confidential. This Circuit has held that judicial documents "may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re New York Times Co.*, 828 F.2d 110, 116 (2d. Cir. 1987). Journalists rely on access to judicial records to disseminate their contents to the public, acting as "surrogates for the public," *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980), and depend on courts to follow the strict scrutiny mandated before closing access to court records. It is crucial in protecting the public's right to access judicial records, then, that courts carefully follow the strict scrutiny required, only sealing them when specific findings can be made to show that a closure order should properly issue.

The underlying case here, *In re September 11 Litigation*, is a high-profile case of great national interest to the public involving lawsuits by individuals and families victimized by the terrorist attacks of Sept. 11, 2001. Americans everywhere were affected by those tragic acts and many remain affected still today. While the plaintiffs here may only represent a small number of the injured and the families who lost loved ones in the attacks, the public at large continues to

have a vested interest in the aftermath of the attacks, including this case. The public wants and needs to know how and why this nation's airline security system was breached thereby putting countless lives at risk. Both the law and public policy are on the public's side in granting access to the records filed in conjunction with this case. *Amicus* has a limited interest in its involvement here in simply ensuring the greatest level of access possible to the public to inspect and review court records. This litigation looks to determine liability with regard to breaches of safety and security that led to the attacks of Sept. 11, 2001; however, whether records filed in this case incriminate or exonerate the Defendants is of no consequence. The focus of *Amicus* here is to ensure this Court fully mandates public access to those records that the Court determines should be open for review.

This nation has long held the belief that the public should enjoy access to judicial records, when appropriate, to provide oversight of the judicial process. This case in particular is one in which the public's interest is so great that access is especially warranted. The Defendants may have produced some information that need not be released to the public and would properly be covered by the Protective Order issued by this Court; however, they have certainly reached well beyond the bounds of that Order in marking nearly all of their documents as confidential. The Defendants clearly disregarded the Order and its intent and instead improperly exploited it to hide information they believed would portray them in a harsh and unfavorable light.

We respectfully ask that this Court grant the Plaintiffs' Motion to Set Aside the Defendants' Designations of Confidentiality and require the Defendants to properly adhere to the Court's Protective Order of March 30, 2004, only allowing documents, or portions of documents, containing information that actually falls within the categories in the Protective Order to be marked as confidential.

## ARGUMENT

### I. There is a great public interest and legal right to proceedings and records related to the terror attacks of Sept. 11, 2001.

September 11, 2001 is instantly recognizable as a date when something went horribly wrong, forcing Americans to realize that attacks killing thousands were stunningly simple to carry out. They were shocked and saddened as they watched or learned about the airplanes crashing into the World Trade Center towers. Those feelings intensified as another hijacked jet hit the center of the nation's defense system at the Pentagon. A further feeling of helplessness set in as they learned that yet another airplane was headed toward Washington, D.C., but that its use as a weapon was thwarted by fellow Americans who stepped in to prevent further atrocities.

The point of this case, and of the public's interest in accessing documents in this case, is not only to answer the underlying questions examining breaches in security that permitted the attacks of Sept. 11, 2001 to occur; rather, it also looks to how we as a society should apportion liability and award damages for such breaches. This is uncharted legal territory that comes with great public interest. Records filed in this lawsuit will presumably put this Court in a position to resolve the liability issue; those same records may provide the public with information it seeks for those reasons and others. Access to these documents serves the public interest.

#### A. The public was affected by the terror attacks of Sept. 11, 2001 and has an interest and a stake in related litigation.

The attacks of Sept. 11, 2001 impacted all Americans, and the effects of that day continue to linger. The day of the tragedies, an ABC News/*Washington Post* poll found that 99 percent of its respondents "watched or listened to broadcast news reports" for developments on what had

happened.[2] A CBS News poll that same day found 80 percent of respondents followed the attacks "very closely."[3] The public had a great interest in learning what occurred that day and relied heavily on the media to bring to light those occurrences. And though time has passed, that interest remains. Just before the sixth anniversary of the attacks in September 2007, a *USA Today*/Gallup Poll found that 71 percent of Americans surveyed called the Sept. 11 attacks "the most memorable news event of their lifetime."[4]

In addition to the concern of learning the details of the attacks, their aftermath also affected thepublic. The complete federalization of airport security, which came about through the creation of the Transportation Security Administration, changed the way this nation's airports operate. There is arguably no greater public interest than in knowing how the government uses or creates its power. Here, the public has an interest in access to information that may potentially explain the flaws in the system that led to broad new grants of federal power over airport security.

Americans everywhere were changed by the events of Sept. 11. The *USA Today*/Gallup poll of September 2007 also found that 29 percent of Americans who responded have changed the way they live following the attacks. Another CBS News poll showed that 25 percent of Americans are now less likely to fly because of the attacks and 20 percent are less likely to attend large events with thousands of people present.[5]

---

[2] ABC News/WASHINGTON POST poll; conducted Sept. 11, 2001; surveyed 608 adults; margin of error +/-4%; released Sept. 12, 2001.

[3] CBS News poll; conducted Sept. 11, 2001; 402 adults surveyed; margin of error +/-3%; released Sept. 12, 2001.

[4] USA TODAY/Gallup Poll, *available at*: http://www.usatoday.com/news/polls/tables/live/sept11-poll.htm.

[5] *Poll: Many Americans Feel Less Safe*, CBS News; conducted Aug. 17-21, 2006; surveyed 1,206 adults; margin of error +/-3%; released Sept. 6, 2006; *available at*: http://www.cbsnews.com/stories/2006/09/06/opinion/polls/main1975940.shtml.

The public has an interest in this litigation and in learning any information it can regarding airline security both before and after Sept. 11, 2001. Litigation such as this, where important facts and information pertaining to Sept. 11 will be presented in a public tribunal for resolution, is of great public interest and the public should have the right to view and evaluate that information for itself.

**B. There is both a public interest and great legal precedent for access to judicial records.**

This country's tradition of a right of access to judicial records began in criminal cases, developed from English common law as a response to the secret justice administered in the English Star Chamber. *See* Geoffrey Radcliffe and Geoffrey Cross, THE ENGLISH LEGAL SYSTEM, 107-108 (5th Ed. 1971). Our nation's leaders quickly determined that they did not want criminal trials conducted in secret without public oversight. Openness in court proceedings, it was determined, would lead to faster determinations of the truth, as well as more conscientious performance of the functions of those connected to the trial process. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 383 (1979).

The public's interest in the proper administration of justice in its court systems, however, does not end with criminal proceedings. Courts, including those within this Circuit, have extended the public's right of access to civil matters as well. *See Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984). Civil cases determine matters that have a great effect on the public from cases involving corporate accountability, such as the case involving former Enron Corporation executives, to product liability cases, such as the wrongful death and injury cases related to defects in Firestone tires. Both the long jurisprudential history and the great public interest in access to judicial proceedings require court records such as those at issue in this case to be open to the public.

**1. Sound public policy requires open access to court records.**

Courts have consistently noted that access to courts and court records is important for public education, public trust, and the integrity of the judicial system. In the criminal justice context, the U.S. Supreme Court has repeatedly ruled in favor of open court proceedings because it has recognized that public faith in judicial institutions requires openness. Thus, in *Richmond Newspapers*, the U.S. Supreme Court established that the public and the press have a First Amendment right to attend criminal trials. 448 U.S. at 580. Later, the Court noted in *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), that there are numerous public policy reasons supporting open judicial proceedings. "[Access allows] the public to participate in and serve as a check upon the judicial process — an essential component of our structure of self government." 457 U.S. at 606. Public scrutiny also promotes fairness by operating as a restraint on possible abuses of judicial power, as well as providing a safeguard against "any attempt to employ our courts as instruments of persecution." *In re Oliver*, 333 U.S. 257, 270 (1984).

Openness also enhances public confidence in judicial proceedings. In *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press Enterprise I*"), the U.S. Supreme Court extended the public's First Amendment right of judicial access to include criminal jury voir dire, explaining that "[t]he value of openness lies in the fact that people not actually attending trials can have confidence that the standards of fairness are being observed" through the attendance of the media and public to "give[] assurance that established procedures are being followed and that deviations will become known." 464 U.S. at 509.

The presumptive right of access extends beyond judicial proceedings to court documents as well. "The common law right of public access to judicial documents is said to predate the Constitution." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). In

support of this long-established right, the U.S. Supreme Court has said, "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).

Courts have long recognized these crucial rights for the public to bear witness to judicial institutions and the important decisions they make, shaping our nation's jurisprudence. Here, the September 11 victims' case is one in which the public has a heightened interest. Whether directly or indirectly, the public is following this case and will be interested in its outcome. This high-profile case involves a quest to determine how and where a breakdown in security of our nation's air travel led to the loss of thousands of lives and the federalization of airline security. The public and the media doubtlessly have an interest in observing court action on these matters that are so clearly in the public interest and concern the public directly.

The U.S. Supreme Court has noted the importance of open access to court records and the function of the press as a conduit of that information from the government to the public, calling journalists the "surrogates for the public," *Richmond Newspapers*, 448 U.S. at 573. Closed proceedings and records, the U.S. Supreme Court wrote, inhibit the "crucial prophylactic aspects of the administration of justice" and lead to distrust of the judicial system if, for example, the outcome is unexpected and the reasons for it are hidden from public view. *Id.* at 571.

To allow court records in this important case to be sealed from public access not only undermines the longstanding pillars of public policy that fosters the public's trust in our court system, but it also disregards the public's great interest in the proceedings in this case. Not only does the public want to know how these atrocities occurred, but it has an interest in seeing what

is being done to avoid similar tragedies in the future. This Court should recognize that prohibiting access to such records is against public policy and grant the Plaintiffs' Motion.

**2. First Amendment and common law rights of access mandate access for court records.**

The Second Circuit has ruled that both a common law and constitutional right of access exist with regard to judicial records. *See Amodeo I*, 44 F.3d at 145; *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). It is well established that the public and the press have a "qualified First Amendment right to attend judicial proceedings and to access judicial documents." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004).

This Circuit has also defined what records constitute "judicial documents" under the law, developing a continuum along which records are evaluated based on their likelihood to "directly affect an adjudication." *Amodeo II*, 71 F.3d at 1049. The documents at issue here have been put forth by the parties as substantive evidence supporting their respective positions and would seem to have direct effect on the adjudication in this case, as they pertain to the heart of the parties' claims. Records such as those filed here, which may be used to determine the parties' substantive legal rights, have a strong presumption of public access, unlike documents that may only play a "negligible" role and are brought to a court "solely to insure their irrelevance." *Id*. Documents filed by both parties, and in particular those filed and arguably improperly marked as confidential by Defendants cannot be considered as irrelevant filings in this case. Under *Amodeo II*, the records at issue are judicial documents that come with a strong presumption of public access.

The U.S. Supreme Court has also long upheld the presumption of public access to court records, and has led other jurisdictions across the country to presume open access to court records. *See, e.g.*, *Warner Communications*, 435 U.S. at 589 (1978) (finding a common law right

of access to judicial records); *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653 (3d Cir. 1991) (right of access to trial records); *Anderson v. Cryovac*, 805 F.2d 1 (1st Cir. 1986) (stating there is a longstanding presumption in the common law that the public may inspect judicial records); *Associated Press v. United States*, 705 F.2d 1143 (9th Cir. 1983) ("*DeLorean*") (finding a First Amendment right of access to court records); *Brown & Williamson Tobacco Co. v. Fed'l Trade Comm'n*, 710 F.2d 1165 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (noting First Amendment and common law rights of access to records); *United States v. Myers* (*In re Nat'l Broadcasting Co.*), 635 F.2d 945 (2d Cir. 1980) (strong presumption of a right of access).

Courts also recognize that, under certain circumstances, it is not in the best interest to release certain records to the public. However, prior to closure, courts must expressly safeguard due process rights by requiring specific findings. In *Richmond Newspapers*, the U.S. Supreme Court, noting the constitutional right of due process, established procedures that courts must follow before denying public access to criminal proceedings. 448 U.S. at 580-81. Other courts have since adopted similar principles finding that due process requirements must be satisfied before a court may limit public access to court proceedings or documents. *See, e.g.*, *United States v. Cojab*, 996 F.2d 1404 (2d Cir. 1993) (discussing due process requirements for closure of proceedings); *Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985) (citing the presumption of openness of judicial records in unsealing records in a civil case).

Those same due process procedures have also been applied by federal appellate courts to cases where judges have issued sealing orders. Sealing orders should not be issued absent evidence of a compelling need for the order and a finding that no less restrictive alternative is available. Federal courts have consistently stricken sealing orders in both criminal and civil cases that fail to meet that strict level of constitutional scrutiny. *See, e.g.*, *Globe Newspaper Co. v.*

*Pokaski*, 868 F.2d 497 (1st Cir. 1989); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988); *In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984). In cases where sealing orders are permitted, a court must apply the strictest scrutiny. *See United States v. McVeigh*, 119 F.3d 806, 814 (10th Cir. 1997) (affirming a sealing order, stating that the district court had "made adequate findings to support its orders" and "narrowly tailored those orders to the compelling interests at stake").

In this case, the Court has recognized the value and importance of public access to records. Records in this case are presumptively open, and when the Court determined that some categories of records filed in this case may present a danger to the parties involved if released to the public, it issued a narrow protective order allowing the parties to mark as confidential any materials relating to the financial or business data it covered. Here, it is the Defendants who seem to lack regard for both the value and importance of public access to records and for this Court's deference and acknowledgment of such access. Their conduct in reaching well beyond the bounds of the Protective Order to prevent public oversight of this judicial matter is contrary to both law and public policy and should be prohibited.

## II. The Protective Order is properly narrowly tailored and should be enforced.

Sealing orders should not be issued unless a court applies strict scrutiny and finds that closure is necessary to serve a higher interest and that no alternatives exist short of closure. *In re New York Times Co.*, 828 F.2d at 116. This Court's Protective Order does not seal all filings in this case, nor does it give the parties broad latitude in determining what they may mark as confidential. It sets forth specific narrow categories of records that may be deemed confidential if the parties have a good faith belief those records qualify under the Order. This Court applied a strict scrutiny standard in determining that some information — primarily information long

regarded as private and confidential including non-public business and financial records of private parties as well as any trade secrets data — could potentially harm parties if released. The Court devised its order narrowly and did not extend it beyond this specific business-related data. The Court did not issue a broad "umbrella" protective order, intended to encompass any and all records the parties believed should be kept confidential. As such, Defendants' disregard of constitutional strict scrutiny recognized in this Order must not stand. This Court should require Defendants to comply with the strict parameters of its Order and designate as confidential only those records which truly fall under the specific categories covered.

To date, the Defendants have produced tens of thousands of pages of documents in this litigation. They then make a "good faith" claim that more than 99 percent of those documents should be properly designated as confidential under this Court's Protective Order. Whether or not Defendants believe that information is or should be *confidential* is not of consequence here — clearly, they believe that all or nearly all of their records should be confidential. What Defendants must adhere to, however, is whether information contained in their records is *allowably confidential* under the Court's parameters in its narrowly tailored Protective Order. Defendants' broad designations of nearly all of their thousands of documents as entirely confidential — meaning they all must contain continuous mentions of proprietary information and trade secrets — is obviously violative of the Protective Order. This Court should set aside those designations.

A number of the documents Defendants filed may actually contain information covered under the Protective Order. Some of those documents may be properly marked, under the Order, as confidential in their entirety if truly appropriate and necessary. But it is more likely that only a

portion need some redactions and fewer still should be marked as entirely confidential under the Order.

This Court anticipated that only portions of records might contain confidential information in drafting Section 7.3 of the Order. Section 7.3 states that if a document containing confidential information must be filed with the Court, the party should redact the confidential information when filing and leave any relevant non-confidential information intact. Defendants here should have carefully parsed their records to determine what should or should not have been marked as confidential under the Protective Order, and should have easily been able to redact the proprietary and trade secrets information from the relevant portions of documents affected. Partial redaction is a much less restrictive alternative to an absolute withholding of documents. With more than 99 percent of the records in this case deemed entirely confidential by the Defendants, it is difficult to believe that they the language of the Court's Order was followed.

## CONCLUSION

Historically, our nation has given strong support to the notion of public access to judicial proceedings. There is great value in a citizenry that has oversight of judicial records and ensures that participants in public tribunals remain accountable and honest. Here, perhaps more than ever, the public has been an active witness to atrocious acts that left this country forever changed. Citizens' interest in learning about how those acts occurred and in ensuring they don't recur is a paramount concern. Information in this litigation directly addresses those questions and may provide answers to a public that has been seeking closure and resolution in the years since Sept. 11, 2001. To allow parties to this case to unilaterally determine that the public has no interest in or right to nearly all of the judicial documents here — against this Court's Order — defies the very cornerstone of democratic access our country has long promoted. It flies in the

face of common law and the First Amendment, and directly defies a strict and narrow Order issued by this Court.

Defendants may well have filed some information with the Court that could properly be classified as confidential under the Protective Order. However, declaring that more than 99 percent of thousands of documents are entirely within the parameters of a narrowly tailored Order, pertaining only to proprietary and trade secrets information, defies common sense, applicable law, and both the letter and spirit of the Protective Order. *Amicus* respectfully asks this Court to grant Plaintiffs' Motion to Set Aside the Defendants' Designations of Confidentiality and ensure that the public will continue to trust its government to provide it with information it has the right to review, requiring Defendants to properly designate as confidential only those documents or portions of documents which expressly fall under the Protective Order.

Respectfully submitted,

/s/ Michael D. Steger
Michael D. Steger (MS-2009)
*Counsel of Record*
Law Offices of Michael D. Steger, PC
1325 Sixth Ave., 27th Floor
New York, NY 10019
(212) 956-9393

Lucy A. Dalglish
Gregg P. Leslie
Corinna J. Zarek
The Reporters Committee for Freedom of the Press
1101 Wilson Blvd., Suite 1100
Arlington, VA 22209
(703) 807-2100

*Counsel for The Reporters Committee for Freedom of the Press*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2007, I caused to be served, via Electronic Case Filing, the Brief of *Amicus Curiae* The Reporters Committee for Freedom of the Press in Support of Plaintiffs' Motion to Set Aside the Defendants' Designations of Confidentiality to the Clerk of the Court; I further certify that on December 21, 2007, I sent an identical copy of that Brief as a courtesy copy to Judge Alvin K. Hellerstein; and I further certify that on December 21, 2007, I served one copy of the foregoing Brief, by electronic mail, to the following liaison counsel:

Desmond T. Barry, Jr., Esquire
Condon & Forsyth, L.L.P.
Times Square Tower
7 Times Square
New York, NY 10036
dbarry@condonlaw.com

Richard A. Williamson, Esq.
Flemming Zulack Williamson Zauderer L.L.P.
One Liberty Plaza
35th Floor
New York, NY 10006-1404
rwilliamson@fzwz.com

Marc S. Moller, Esq.
Kreindler & Kreindler
100 Park Avenue
New York, NY 10017-5590
mmoller@kreindler.com

Beth E. Goldman, Esq.
Sarah S. Normand, Esq.
Assistant U.S. Attorneys
United States Department of Justice
Southern District of New York
86 Chambers Street
New York, NY 10007
beth.goldman@usdoj.gov
sarah.normand@usdoj.gov

/s/ Michael D. Steger
Michael D. Steger (MS-2009)
*Counsel of Record for The Reporters Committee for Freedom of the Press*